NORA L. WOODSON v. METROPOLITAN STREET RAILWAY COMPANY and KANSAS CITY, Appellants.

Division One, December 23, 1909.

1. **STREET: Assumed to be in City.** The proof should show that the street, alleged to have been defective and to have been the cause of deceased's death, was in the defendant city. But where both sides at the trial assumed the street to be a public street within and under the control of the city, the same theory will be enforced on appeal, and the judgment will not be reversed for a lack of such proof.

2. **NEGLIGENCE: Pleading Defective Sidewalk: Proof of Obstructed Parking: Variance.** Where the petition charges that the sidewalk was obstructed by iron rails placed thereon, and the proof shows they were on the parking space five feet and ten inches wide between the paving and curb, there is no variance. It does not follow, because the parking space was planted in trees and grass and was not paved, that it was withdrawn from public pedestrian use. Usually the sidewalk includes all the street between the building line and the curb.

3. ————: **Contributory: Lack of Ordinary Care.** A failure on the part of a pedestrian to avoid an obstruction in the sidewalk is such contributory negligence as bars a recovery for his injuries. And so where defendant street railway company had placed, about the middle of the block, iron rails on the plot of parking between the pavement and the curb, and the same had remained there in full view for five months, and the pedestrian, accustomed to walk on that street, in broad day, undertook to cross from the pavement to the opposite side of the street, and stumbled and fell, the back of his head striking one of the

rails, when by going up the brick pavement to a point beyond the pile of rails he could have crossed in safety, there can be no recovery against either the city or railway for his death, if he was in possession of his faculties; for in that case he deliberately chose a dangerous way, which he could have avoided by the exercise of ordinary care.

4. ———: ———: Fall from Vertigo: Anticipation. If the pedestrian, while on the pavement was suddenly seized with vertigo, and in an endeavor to save himself from falling he staggered towards the near by tree on the plot of parking and tried to grasp it, but failed, and in falling his head struck the iron rails negligently permitted by the city to remain upon the plot, he was not guilty of negligence, but the city was, and is liable, and cannot excuse itself on the theory that the injury was not to be reasonably anticipated as a sequence of its negligent act.

5. ———: ———: ———: ———: Not Submitted. But where plaintiff neither by her petition nor by her instructions presented this theory of the city's liability to the jury, a verdict for her based upon that theory alone cannot stand. But where, under the facts of the case, there is substance in that theory, the judgment will not be reversed outright, but the cause will be remanded for a new trial.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

REVERSED AND REMANDED.

*E. C. Meservey* and *W. H. H. Piatt* for appellant Kansas City.

(1) The court erred in overruling demurrer of defendants at the close of plaintiff's testimony and at the close of all the testimony, for the reason: (a) The fall of deceased occurred in broad daylight and the obstruction which plaintiff claims caused the fall, was in plain view of the deceased. There was nothing to distract his attention therefrom, and his action in stumbling over said obstruction, if he did stumble, was negligence *per se*. Wheat v. St. Louis, 179 Mo. 578; Davis v. Railroad, 105 Cal. 131; Yahn v. Ottumwa, 60 Iowa 429; Cohn v. Kansas City, 108 Mo. 393; Grandorf

v. Railroad, 113 Mich. 496; King v. Colon, 125 Mich. 516; Casey v. Madden, 163 Mass. 507; Foraker v. Sandy Lake, 130 Pa. St. 123; Moore v. Huntington, 31 W. Va. 842; Durkin v. Troy, 61 Barb. 457; Ray v. Poplar Bluff, 70 Mo. App. 261; Wilson v. Charleston, 8 Allen, 137; Erie v. Magill, 101 Pa. St. 616; Butterfield v. Forrester, 11 Eastman 60; Bruker v. City of Covington, 69 Ind. 33; City of Bedford v. Neal, 143 Ind. 425; McLaurey v. City of McGregor, 54 Iowa 717; Stackhouse v. Vending & Co., 166 Pa. St. 582; Knight v. Baltimore, 97 Md. 647. (b) The defendant city owed the deceased the duty only of keeping in a reasonably safe condition for him to walk upon and over, that portion of the street which it had improved and put in condition for the use of pedestrians. Craig v. Sedalia, 63 Mo. 417; Ely v. St. Louis, 181 Mo. 729; Ruppenthal v. St. Louis, 190 Mo. 222; Downend v. Kansas City, 156 Mo. 70. (c) The state of the evidence is such as to leave the cause of the fall of the deceased to conjecture and surmise. Smart v. Kansas City, 91 Mo. App. 592; Demaet v. Storage Co., 121 Mo. App. 104; Warner v. Railroad, 178 Mo. 131. (2) It was error for the medical experts of plaintiff, over the objection of defendants, to tell the jury that the death of deceased was caused by striking his head on the street car rail. Glasgow v. Railroad, 191 Mo. 358; Taylor v. Railroad, 185 Mo. 255. (3) The court erred in giving plaintiff's instructions 1 and 3, for the reason that said instructions: (a) Usurp the province of the jury and assume the truth and existence of alleged facts and conditions which are controverted by the pleadings and evidence. Lynn v. Massilon Bridge Co., 98 Mo. App. 111; Browning v. Railroad, 118 Mo. App. 458; Klein v. Railroad, 117 Mo. App. 691; Mathews v. Railroad, 26 Mo. App. 89. (b) They tell the jury that the city was bound to keep the unimproved space between the sidewalk and curb in the same condition as the sidewalk itself. Fockler v. K. C., 94 Mo. App. 464; Ruppenthal v. St. Louis,

190 Mo. 222; Craig v. Sedalia, 63 Mo. 417. (c) Are in conflict with defendant Street Railway Company's instructions 5 and 8 and defendant city's instruction 4. Hamilton v. Railroad, 114 Mo. App. 504; Porter v. Railroad, 199 Mo. 82. (d) Ignored evidence and material issues presented by defendants. Phelan v. Granite Pav. Co., 113 Mo. App. 435.

*John H. Lucas* and *Chas. N. Sadler* for the Metropolitan Street Railway Company, appellant.

(1) The peremptory instruction in the nature of a demurrer to the evidence, offered by this appellant, at the close of plaintiff's case and renewed at the conclusion of all the evidence, should have been given. Golden v. City of Clinton, 54 Mo. App. 100; Hesselbach v. City of St. Louis, 179 Mo. 505; Fockler v. Kansas City, 94 Mo. App. 464; Beck v. Brewing Co., 167 Mo. 195; Wheat v. City of St. Louis, 179 Mo. 572; Allen v. Railroad, 183 Mo. 411; Boyd v. Railroad, 103 Mo. App. 303; Powell v. Railroad, 80 Mo. 85. (2) Plaintiff must prove that Charlotte street at the point where this accident occurred is a public street in Kansas City, Missouri, and that the part on which the accident occurred was actually thrown open to travel by the public. Golden v. City of Clinton, 54 Mo. App. 100. (3) Cities are not compelled to keep all parts of their streets and sidewalks in a reasonably safe condition for persons traveling thereon, but only such part as it has thrown open for public use. Coffey v. City of Carthage, 186 Mo. 583; Pueschell v. Wire & Iron Works, 79 Mo. App. 459; Fockler v. Kansas City, 94 Mo. App. 464. (4) A person using that space left between the sidewalk and street curbing cannot presume said space is free from all obstructions. Fockler v. Kansas City, 94 Mo. App. 464; Coffey v. City of Carthage, 186 Mo. 573. (5) The owner of abutting property owes no duty to maintain the sidewalk or street in front of his premises in a safe condition, and is not

responsible for any defects therein or obstructions thereon not caused by his own wrongful act. Beck v. Brewing Co., 167 Mo. 195; Reedy v. St. Louis Brewing Ass'n, 161 Mo. 523; Hesselbach v. City of St. Louis, 179 Mo. 505; Baustian v. Young, 152 Mo. 317; City of Independence v. Slack, 134 Mo. 66; City of St. Louis v. Insurance Co., 107 Mo. 92; Norton v. St. Louis, 97 Mo. 537. (6) Where plaintiff's own evidence shows contributory negligence demurrer should be sustained. Cohn v. Kansas City, 108 Mo. 393; Roberts v. M. & K. Tel. Co., 166 Mo. 371; Wheat v. City of St. Louis, 179 Mo. 572; 29 Cyc. 511; Wheat v. St. Louis, 179 Mo. 578; Butterfield v. Forster, 11 East 60; Davis v. Railroad, 105 Cal. 131; Yahm v. Ottumwa, 60 Iowa 429. (7) The court committed error in giving instructions for plaintiff and in giving instructions asked by appellant Kansas City and in giving instructions of its own motion. Hesselbach v. City of St. Louis, 179 Mo. 505; Pueschel v. Wire & Iron Works, 79 Mo. App. 459; Jones v. Railroad, 178 Mo. 529; Lee v. Railroad, 195 Mo. 400. (8) Injury resulting from either of two causes, for one of which defendant is liable, plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result, and if the evidence leaves it to conjecture the plaintiff fails. Smart v. Kansas City, 91 Mo. App. 586; Young v. Railroad, 113 Mo. App. 636; Browning v. Railroad, 106 Mo. App. 729; Fuchs v. City of St. Louis, 167 Mo. 620; Deamet v. Storage Co., 121 Mo. App. 92; Warner v. Railroad, 178 Mo. 131. (9) The same rule applies where death ensues. Deamet v. Storage Co., 121 Mo. App. 92; Warner v. Railroad, 178 Mo. 131. (10) The placing of rails in the place these were is not an illegal use of the street or sidewalk, and did not form an illegal obstruction. Hasselbach v. City of St. Louis, 179 Mo. 505; Pueschell v. Wire & Iron Works, 79 Mo. App. 459; Gerdes v. Foundry Co., 124 Mo. 354. (11) The verdict in this

case is contrary to the positive instructions of the court. Allen v. Railroad, 183 Mo. 411; Boyd v. Railroad, 103 Mo. App. 303; Flieschman v. Miller, 38 Mo. App. 177; Gessley v. Railroad, 26 Mo. App. 156. (12) It is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not reasonably have been anticipated, and would not, unless under exceptional circumstances have happened. American Brewing Ass'n v. Talbot, 141 Mo. 674; Chandler v. Gas Co., 174 Mo. 327; Fuchs v. St. Louis, 167 Mo. 646; Ray on Negligence, pp. 133-134. (13) When specific acts of negligence are alleged it devolves upon the plaintiff to prove the acts of negligence pleaded, and if she recovers at all it must be on the specific acts of negligence pleaded, and not otherwise. Orcutt v. Cent. Bldg. Co., 201 Mo. 443; McGrath v. Railroad, 197 Mo. 105; Bartley v. Railroad, 148 Mo. 124; Ferry v. Railroad, 167 Mo. 96; Ely v. Railroad, 77 Mo. 34; Bunyan v. Railroad, 127 Mo. 12; Hamilton v. Railroad, 114 Mo. 508.

*Frank P. Walsh* and *E. R. Morrison* for respondent.

(1) (a) It was conceded at the trial that this was a public street. Knight v. Kansas City, 113 Mo. App. 561; State v. Baldwin, 214 Mo. 290. As to the liability of the Street Railway Company, acceptance of the street by the city need not be shown. Beck v. Carter, 68 N. Y. 283; Carroll v. Water Co., 5 Wash. 617; 28 Cyc., 1435. (b) The space between the curb and the brick sidewalk should be kept reasonably safe. Fockler v. Kansas City, 94 Mo. App. 468. (c) The evidence showed that the fall was caused by stumbling over the bent rail. Soeder v. Railroad, 100 Mo. 673; Settle v. Railroad, 127 Mo. 341; Buesching v. Gaslight Co., 73 Mo. 219; Shore v. Bridge Co., 111 Mo. App. 278; Leright v. Ahrens, 60 Mo. App. 118; Musick v. Dold Packing Co., 58 Mo. App. 333; 28 Cyc., 1408. (d) The

evidence was sufficient to show that the Metropolitan Company placed the rails at this point. (e) The obstruction in question was unreasonable, unnecessary, and was a permanent use of the street, and therefore illegal, but even if it had been legal the Street Railway Company would be liable for its negligence. 28 Cyc., 1434; Gerdes v. Iron & Foundry Co., 124 Mo. 354; Wood v. Mears, 12 Ind. 520; Jackson v. Robinson, 66 Wis. 642; Chicago v. Robbins, 2 Black (U. S.) 424; Johnson v. Whitefield, 18 Me. 286; Rex v. Jones, 3 Campb. 230. (f) The cause of death was sufficiently shown by the medical testimony. (2) Deceased was not guilty of contributory negligence. Barr v. Kansas City, 105 Mo. 558; Stephens v. City of Macon, 83 Mo. 345; Perrette v. Kansas City, 162 Mo. 251; Chicago v. Babcock, 143 Ill. 363; Barry v. Terkildsen, 72 Cal. 256; Houston v. Traphagen, 47 N. J. L. 24; Gilbert v. Boston, 139 Mass. 313; Dewire v. Bailey, 131 Mass. 169; Albion v. Hetrick, 90 Ind. 547; Jochem v. Robbins, 66 Wis. 643; Augusta v. Tharpe, 113 Ga. 158; Brusso v. Buffalo, 90 N. Y. 679; Olathe v. Mizee, 48 Kan. 535. (3) There is no variance between the petition and the proof. (4) The injury was such as should have been reasonably anticipated. (5) Instructions for the plaintiff were not erroneous. Sexton v. Zett, 44 N. Y. 430; Moore v. Railroad, 73 Mo. 440; Owens v. Railroad, 95 Mo. 181. (6) There was no error in refusal of instructions. Dean v. Railroad, 199 Mo. 411.

GRAVES, J.—Plaintiff, the widow of Major Blake L. Woodson, brings this action to recover damages for the alleged wrongful death of her husband, alleged to have been caused by the negligence of the defendants. The accident which resulted in the death of Major Woodson occurred on the west side of Charlotte street between Twelfth and Thirteenth streets, and as alleged at a point one hundred and seventy-five to two hundred feet south of the southwest corner of

Twelfth and Charlotte streets. On that side of the street practically all of the block between Twelfth and Thirteenth streets was occupied by a power house and shops belonging to the defendant railway company. It is charged:

"Now comes the plaintiff and for her cause of action against the defendants states that the defendant Metropolitan Street Railway Company is and was at all the times hereinafter mentioned a street railway company, organized and existing under and by virtue of the Constitution and laws of the State of Missouri, and operating a large number of lines of electric and street railway in Kansas City, Jackson county, Missouri, and particularly a certain line of cable railway known as the Twelfth Street Line in said city; that at all of the times hereinafter mentioned, said defendant, Metropolitan Street Railway Company, had for its use in connection with said Twelfth Street Line a certain building or power house located at the southwest corner of Twelfth and Charlotte streets in Kansas City, Jackson county, Missouri; that defendant Kansas City is and was at all the times hereinafter mentioned a municipal corporation; that Charlotte street in said city, from Twelfth street to Thirteenth street, is, and was at all the times hereinafter mentioned, a public street and highway of Kansas City, Jackson county, Missouri; that all the times hereinafter mentioned plaintiff was the lawfully wedded wife of Blake L. Woodson, now deceased; that all the times hereinafter mentioned it was the duty of the defendant Kansas City to use ordinary care to keep said street and the sidewalks thereof in a reasonably safe condition for travel and free from all obstructions which would render said street not reasonably safe for use of the traveling public; that at all times it was the duty of defendant Metropolitan Street Railway Company not to render said streets and said sidewalks unsafe and dangerous by placing or permitting obstructions to exist thereon by

its act; that on or about the 16th day of March, 1902, the sidewalk upon the west side of Charlotte street between Twelfth street and Thirteenth street aforesaid, and immediately adjacent to the power house of defendant Metropolitan Street Railway Company, was unsafe and dangerous in this: That the defendants had placed and permitted to remain thereon a large number of iron or steel rails; said iron or steel rails lying in various positions upon said sidewalk and forming a dangerous obstruction to travel thereon; that said sidewalk was in such defective, unsafe and dangerous condition upon said day and had been for a long period of time, to-wit, for many months, so that the defendants, and each of them, had notice of said defective, unsafe and dangerous condition on account of the obstructions aforesaid, or by the exercise of ordinary care would have known of such condition for a time reasonably sufficient to have removed said rails and remedied said defective, unsafe and dangerous condition before the happening of the catastrophe hereinafter mentioned, but that both of said defendants carelessly and negligently failed and omitted so to do.''

By admissions of the parties it appears that on the west side of Charlotte street there was a brick sidewalk six and two-tenths feet wide; that to the building line from this sidewalk was four and one-tenth feet; that from the east edge of the sidewalk to the curbing it was five and eight-tenths feet.

It was shown that there was a row of trees between the curbing and the sidewalk and admitted that the tree near the point of accident was two and seventenths feet from the curbing, and that the trees in the row were twenty feet apart. That these rails, such as were used in the construction of street railway tracks, had been there for some months, the evidence clearly shows. They were not on the brick pavement but between the pavement and the curbing, and one

witness says some were in the street.  The evidence shows that there was at least one curved rail, and for the plaintiff it was made to appear that one end of this curved rail came within five or six inches of the brick pavement.

On the day of the accident, which was Sunday, and about eleven in the forenoon, the deceased was walking north on the brick portion of the sidewalk, leisurely smoking a cigar, when according to plaintiff's theory, he started across in a northeast direction to a drug store on the opposite side of the street, where he had occasionally traded, when he stumbled and fell, the back of his head striking the sharp edge of one of these rails, which cut a gash therein, back of the left ear, and from the shock of this blow, he then and there within a few minutes died.  Plaintiff's theory is that his foot struck this curved rail, and that as he stumbled forward, he reached for a tree near by and whether he grasped the tree or not he so checked the forward movement as to be thrown backward in a manner to strike the rail as aforesaid.  An autopsy was held and from that it was developed that deceased was suffering from Bright's disease.  Defendants' witnesses say deceased was walking in the middle of the brick pavement, when all at once he began to stagger as a drunken man and finally fell, upon this rail.  They also say he tried to catch to the tree and one of them seemed to think his hand touched the tree.  The medical testimony, as is usual in such cases, differs widely, save and except that the deceased had Bright's disease.  Plaintiff's medical testimony was that it was chronic and deceased might have lived for some time but for the shock of the blow.  On the other hand defendants' experts were of the opinion that deceased was practically a dead man before he struck the iron rail.  Defendants also proved that several months prior thereto the deceased had been attacked by dizziness in the court room during the trial of a case, and remained at home some two or more

weeks thereafter. On the other hand it is shown that on the morning of the accident, the deceased was hale and hearty as usual, being a man of strong physique, although advanced in years; that he ate his breakfast as usual, and after reading the morning papers started down town. He had gone but a few blocks when the end came.

The trial resulted in a verdict and judgment for the plaintiff in the sum of five thousand dollars, from which both defendants have duly appealed. This in a general way states the case.

Defendants press with great force the failure of the trial court to give their respective peremptory instructions, offered both at the end of plaintiff's case and at the end of the whole case. The disposition of the several points made against the trial court for this failure will require more details of the evidence, but these we will give in the course of the opinion.

I. There are some matters upon the question of the demurrers to the testimony which are common to both defendants, and others which only go to one or the other of them. To better understand the questions, we will state the character of the answers. The street railway filed a simple general denial. The city admitted its corporate capacity, and denied all other allegations of the petition in the first paragraph of its answer, and in the second paragraph was the usual plea of contributory negligence.

It is first urged that there is no proof that Charlotte street was one of the public streets of Kansas City, or was within the corporate limits of said city. This would be a very serious question were it not for the conduct of counsel throughout the trial and even later in this court. In the very recent case of Vonkey v. City of St. Louis, 219 Mo. 37, we had occasion to condemn this method of trying a case. We there said: "There are at least two good reasons for sustaining

the action of the trial court in this cause. In the first place, there are three streets mentioned in the evidence, to wit, Ewing avenue, Washington avenue, and Locust street, as being at or near the *locus* of the accident. One witness, Fraudenstein, testified: 'I am in the laundry business, 2907 Pine street. I have lived there for about thirty-five years. I know the locality of Ewing, between Washington avenue and Locust street. It has asphaltum on the street. I know it to be a street at least twenty-five years.' This is all 'we find in the entire record as to whether or not these streets are in the city of St. Louis, or that the accident occurred within the corporate limits of the city of St. Louis. Counsel for plaintiff seems to have proceeded upon the theory that not only the lawyers engaged in the case knew that the streets were in the city of St. Louis, and therefore the accident occurred in said city, but, further, that both the trial court and this court were fully advised as to the *locus* of the accident and these streets. The trial court could not take judicial cognizance of the fact that these three streets were within the corporate limits of the city of St. Louis. This was a matter of proof and the issue was made by the general denial. Nor can this court take judicial cognizance of such fact, if it be a fact. For this reason, if for no other, the demurrer to the evidence was properly sustained. This loose method of trying cases in the large cities should be stopped. A few lines of testimony, or a short admission in the record, will suffice, but we cannot strain the doctrine of judicial cognizance to the extent of entertaining judicial knowledge of the existence of streets in municipalities, and will not do so.''

In that case the trial court had forced a nonsuit and plaintiff appealed. There, of course, were not the things in the conduct of the case showing that both sides assumed that the street was one under the control and in the possession of the city as in this case. The city, in the case at bar, only raises the question in

the reply brief. In its first brief, the city says: ''The sidewalk constructed by the city for the use of pedestrians was, at the time, absolutely safe, and the obstruction on the parking was in plain view and all the conditions were perfectly obvious to the deceased.''

The defendant railway, as tending to show its attitude in the matter asked the following instruction:

''The court instructs the jury that the petition in this case charges that the defendants, Kansas City and the Metropolitan Street Railway Company, carelessly and negligently permitted certain iron rails to remain on the sidewalk on the west side of Charlotte street at a point about 187 feet south of Twelfth street, which rendered said sidewalk unsafe and dangerous for travel thereon, and that Blake L. Woodson was, by reason of said condition, thrown to the ground and killed.

''The court instructs you that if you believe this contention on the part of the plaintiff be true, then both the defendants are liable, but if you should believe that the defendant Metropolitan Street Railway Company negligently placed said rails upon said sidewalk, and that the city negligently permitted them to remain there, then the plaintiff cannot recover in this case, and your verdict will be for the defendants.''

Other things throughout the record might be cited as tending to show that both sides in the trial of this case assumed that Charlotte street was within the corporate limits of Kansas City, and was a public street over which the said city was exercising control. In this the facts are different from the Vonkey case, *supra*.

We are of opinion that there is clear evidence in this record that both sides assumed Charlotte street to be a public street under the control of the city, and such being the situation counsel will not be permitted to change attitude in this court. This contention will

be ruled against the defendant. [Knight v. Kansas City, 113 Mo. App. 561.]

We repeat, however, that courts cannot take judicial notice of the location, the use and control of streets, and whilst under the peculiar state of this record we find that both sides assumed these things to be true and as proven, yet this loose method of trying cases was properly condemned in the Vonkey case, *supra*, and would be held fatal to this case but for the reason assigned above.

II. Point was made in the argument before this court that the obstruction complained of was not on the sidewalk, and therefore there is a variance between the pleading and proof. It should be noticed that the petition, a part of which is in the statement quoted, does say that it was the duty of the defendant city to keep Charlotte street and the sidewalk in question free of obstructions, but when the petition gets to the point of charging the negligent act it leaves out the street and confines the negligent act to an obstruction of the sidewalk. The language used in this connection is: "that on or about the 16th day of March, 1902, the *sidewalk* upon the west side of Charlotte street. . . . . . was unsafe and dangerous in this; that defendants had placed and permitted to remain thereon a large number of iron or steel rails lying in various positions upon said sidewalk and forming a dangerous obstruction to travel thereon; that said *sidewalk* was in such dangerous condition upon said day and had been for a long period of time," etc.

It thus appears that the obstruction charged is one upon the sidewalk and not elsewhere. The variance urged is that the proof shows that the obstruction was not on the sidewalk, but on the parking between the sidewalk and the curbing. We are not impressed with this contention. As distinguished from the street proper, all of the space between the curb line

might be denominated the sidewalk. In this instance and in many instances, a space of level grass plot was left upon each side of the brick walk. Yet it would not do to say that these strips were withdrawn from public use, except so far as the city had exercised its right to place things of ornament or public use therein, in which case the traveler on or across the spaces would be bound by the uses to which the city had thus placed the spaces, and would have only the right to use them subject to the uses theretofore properly fixed thereon by the city. Trees might be planted at such places. A hydrant might be placed there. In fact anything of this character, and the traveler would have to use the spaces, with the inconveniences and risks thus imposed. It has been said that the word "sidewalk" has no strict legal interpretation, and what constitutes the sidewalk as contradistinguished from the street must be determined from the facts. [Porter v. Waring, 69 N. Y. 250; Graham v. City of Albert Lea, 48 Minn. 201.]

It is usually recognized as that part of the street upon either side thereof that has been arranged for foot passengers, and not intended for use by vehicles and horsemen.

In Elliott on Roads and Streets (2 Ed.), sec. 20, it is said: "There are cases in which the term street will be construed to mean only that part of the way which lies between the parts especially intended for footmen. These parts are usually placed on either side of the way and are commonly called sidewalks. It often becomes important to distinguish between the part of the way intended for horsemen and vehicles, and that part intended especially for the use of pedestrians, and the term sidewalks has come to be generally used in this country for the purpose of designating this part of the way, and as the term is an expressive and convenient one it is likely to find a permanent place in legal terminology."

And in Wabash Ry. v. DeHart, 65 N. E. l. c. 193, the term is thus defined: "The word 'sidewalk' has a well-understood meaning. We understand, *ex vi termini*, that a part of the street is meant. It is the public way, generally somewhat raised, especially intended for pedestrians, and adapted to their use, usually constructed in this country as a part of a street at or along the side of the part thereof especially designed and constructed for the passage of vehicles and animals; there being often, if not generally, a gutter, also constituting a portion of the street, between such parts; and when a sidewalk is spoken of as being on a specific side of a designated street, it is to be understood to be a part so reserved of that street at or along the specific side of the roadway."

We are of the opinion that all of that portion of the street from the building line to the curbing can properly be called the sidewalk of Charlotte street. Pedestrians have a right to use it all unless some portion thereof is specially restricted by ordinance. This use was fully recognized in the case of Augusta v. Tharpe, 113 Ga. l. c. 158.

This contention is therefore ruled against the defendants.

III. It is next contended that the demurrers should have been sustained because the alleged obstruction was open and obvious and the deceased was guilty of contributory negligence in undertaking to pass from the brick sidewalk to the street over such obstruction. It was a bright forenoon. The sun was shining, but the day was windy. Defendants urge that if deceased was not affected at the time by dizziness resulting from his disease he was clearly guilty of such contributory negligence as will bar plaintiff's recovery, and they further say that if he was thus affected, and fell by reason thereof, and was injured on the rails, such a case was not one which could have reasonably

been anticipated as the result of the alleged negligence and on that score the demurrers should have been sustained. The plaintiff challenges both contentions. Of these therefore in their order.

(a)  If deceased was at himself and undertook to cross over at the point of this obstruction, was he guilty of contributory negligence as a matter of law? Usually contributory negligence is a question for the jury, but there are many cases where the evidence is so much one way that it becomes the duty of the trial court to declare the conduct negligent as a matter of law. Is this such a case? We think so. It appears that this street was on the route of deceased from his home to the city. His nephew who lived with him used the street. It appears that the deceased was in the habit of stopping and buying cigars at a drug store across and a little north from the place of injury. His residence was but a short distance therefrom, and he had resided at the one place for seventeen years. This pile of railroad rails had been there for at least five months, if not much longer. At that season of the year the grass had not grown up on the little plot between the bricks and the curb. The pile of rails was such an obstruction as could have been seen had deceased been in the exercise of ordinary care for his own protection. Even grant it that it was his desire to go to this drug store (of which fact there is no evidence, but is a mere surmise in the case), yet he had two ways open to him— one a dangerous one—the other a safe one. By going up the brick sidewalk, which was unobstructed, to a point beyond the pile of rails, he could have crossed with safety.

In the case of Wheat v. St. Louis, 179 Mo. 1. c. 581-2, this court said: "In short the rule is supported not only by the almost universal trend of authority, both English and American, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe

for persons to pass over, the citizen owes the city the
duty to use his God-given senses, and not to run into
obstructions that he is familiar with *or which by the
exercise of ordinary care he could discover and easily
avoid.* And while the city may be negligent in the
discharge of its duty, the citizen may also be negligent
in the discharge of his duty. And if both are negli-
gent and their negligence contributes to the injury,
there can be no recovery. And if the plaintiff's negli-
gence necessarily contributes to the happening of the
injury, there can be no recovery.''

To a like effect is Kaiser v. St. Louis, 185 Mo. l. c.
374: ''Moreover, the plaintiff had driven along that
particular part of the street every day for at least ten
days, and he therefore knew *or could have known by
the exercise of ordinary care,* that the pile of earth was
there, and as it was no larger than a bucket, he could
have easily avoided it, if he had used his senses and the
degree of care that is required of one who drives a
wagon on a public highway.'' The italics in the fore-
going quotations are ours. We simply desire to impress
that it is the duty of a traveler to exercise ordinary
care in traveling upon the public highways.

Again in Coffey v. City of Carthage, 186 Mo. l. c.
585, the rules of conduct of a traveler upon the high-
way or sidewalk (in that case a sidewalk) is thus
stated: ''The law upon this proposition may thus be
briefly stated: If plaintiff had no knowledge of the
defect or hole in the sidewalk, then she had the right
to assume that the sidewalk was in a reasonably safe
condition. But while she was entitled to act upon this
assumption, still she must exercise that degree of care
and caution in walking on said sidewalk which a pru-
dent person ordinarily employs under similar circum-
stances. If, by the exercise of a reasonable degree of
care and caution, she could have discovered the defect
or hole in the sidewalk, and avoided the injury, it was
incumbent upon her to do so, and if she failed to com-

ply with this duty that every citizen owes the city, and proceeded carelessly and without paying any attention to where she was walking, then there can be no recovery."

In Cohn v. City of Kansas, 108 Mo. 1. c. 393, Judge BLACK said: "While in general it is for the jury to say whether the plaintiff used ordinary care, and this question they are to determine from all the circumstances, still it often occurs that the court may declare the plaintiff wanting in due care on given facts. One who attempts to cross over a sidewalk as part of a road, known to him to be dangerous, when the dangerous place could have been easily avoided, as by passing around it, or taking another side of the road, is wanting in due care, and the court may so say as a matter of law."

The Iowa court puts the rule thus in the case of Yahn v. City of Ottumwa, 60 Iowa 1. c. 433: "It was not claimed that the husband's attention was in any manner diverted from properly driving the team after he took his seat in the wagon. The accident happened in broad daylight. Now, if the stone was in full view of the husband when he started the team, it was his plain duty to have seen and avoided it. The defendant requested the court to instruct the jury 'that it was the duty of the plaintiff's husband to use care in driving, and to look where he was driving, and to avoid all obstacles which were dangerous in their character and which were plainly visible and not obscured, and if he failed to do so, and the plaintiff was thereby injured, then she cannot recover.' This instruction was refused. We think this, or some other explicit instruction applicable to this view of the facts of the case, should have been given. Where an obstruction is in the street in plain view of the driver of a vehicle, and his attention is in no manner diverted so as to excuse him for not seeing the obstruction, and he drives

against it or into it, he is clearly guilty of contributing proximately to any injury which may result.''

It is not worth while going to other states for authority. The rule could not be more clearly stated than in the Coffey case, *supra*, as to the duty of travelers to exercise ordinary care in walking over sidewalks. Now plaintiff's testimony shows that these rails were easily seen, and that deceased was leaving the usual pathway, to go upon that part of the space not especially prepared for travel, although deceased had the right to travel it. We are satisfied that if deceased was at himself at the time, the exercise of ordinary care upon his part would have avoided the accident. The cases, *supra*, are the latest utterances of this court upon the question, and it would serve no good purpose to further review the case law of the state, or of other states. To the mind of the writer it would appear that these last expressions of the court lose sight of the idea that a pedestrian can assume whilst walking over a sidewalk that the city has performed its duty and that the sidewalk is reasonably safe for travel. But both divisions of the court have concurred in the doctrine of these late cases and we feel that they should be followed.

(b) But plaintiff urges that, concede it to be true, as defendants say, and as their evidence strongly tended to prove, that deceased became affected and staggered from the brick walk to the sodded portion thereof and in that condition received an injury which hastened his death, yet plaintiff is entitled to recover. We shall consider this question, first, upon the merits of the contention without reference to the pleadings. We start with the proposition that under the evidence there was a dangerous obstruction upon the sidewalk and the same had been there for such length of time that the law presumes notice upon the part of the city, and for that reason its maintenance there at the date of the accident was negligence upon the part of the city. As to the other defendant, we will discuss

that later. Now, under these facts, with a part of the sidewalk negligently obstructed by the city, let us proceed with proper caution to get the case properly stated upon the theory that deceased was overcome by vertigo or some other condition superinduced by disease which was praying upon his vitals. The case made may be thus stated: Deceased was leisurely walking along on that portion of the sidewalk which had been paved, and which was not obstructed. Suddenly he is seized with vertigo or something of that character. In his desperation he staggers toward the little tree and tries to grasp it, but fails and falls upon the obstruction negligently there maintained by defendant city. He strikes his head with such force as to cut through to the skull bone for the length of an inch and a half. The plaintiff's physicians say that the shock from that blow was the cause of his death at that immediate time; that whilst subsequently he would inevitably have been overcome by the disease, the symptoms revealed were not such as to indicate this early demise, save and except as the diseased condition was augmented by the shock. Under the evidence, but for the obstruction the fall of deceased would have been upon the soft grass plot. Under these facts is there liability upon the part of the city? The city says not, because it was an injury which was not to be reasonably anticipated as a sequence to its negligent act. Is this true? Under these facts, it cannot be said that deceased was negligent. A man blinded by vertigo, or suffering from some other similar condition, cannot be said to be negligent if he grasps for support a little tree planted by the city in a portion of the sidewalk. The proximate cause of his injury would consist of two acts, one coming from him in a dazed condition, and not negligent, and one coming from the city in permitting an obstruction upon the sidewalk, which act was negligence. It ofttimes occurs that the proximate cause of

an injury is of double character. In other words there may be two or more causes uniting to produce the injury. In such case if the act of the plaintiff, which is one of the causes, is not negligent, and the act of the defendant, which is the other of such causes, is negligent, then there can be a recovery by the injured party or the one to whom the cause of action goes, if death results from the injury. [Musick v. Dold Packing Co., 58 Mo. App. 322.] This case was discussed and approved by this court in Huss v. Bakery Co., 210 Mo. l. c. 53. It is true that we distinguished the Musick case from the Huss case, but we fully recognized the soundness of the law announced in the Musick case. In distinguishing the cases we used this language: ''Here we have a record full of evidence that the plaintiff had neglected one of his duties in permitting the passageway to become slippery. The slippery condition occasioned his fall, and as a result of the fall, his injury. The case is not on all-fours with Musick v. Dold Packing Company, 58 Mo. App. 322, relied upon by the plaintiff. In the Musick case the fall of plaintiff was occasioned by a slippery floor, and by the fall the plaintiff was thrown into an uncovered vat of hot water and burned. There was no evidence in that record to the effect that the slippery condition was the result of neglect or failure upon the part of Musick, and therein lies the distinction between that case and the case at bar. In other words, Musick had been guilty of no negligence which contributed to his injury, as a proximate cause thereof, or as one of the proximate causes thereof. Here the jury could readily find that the fall upon the slippery floor, at least one of the proximate causes of the injury, was occasioned by the neglect of the plaintiff, and in that way his own neglect contributed to the injury received and was one of the producing causes thereof. There may be a combination of causes producing an injury. In this case, but for the slippery floor (a condition superinduced by the neg-

ligence of the plaintiff) there would have been no fall and consequently no injury. On the other hand, there might have been the fall and no consequent injury had the machinery been guarded. The injury was not therefore entirely dependent upon one cause, but upon a result of the two combined, one of which was the product of plaintiff's neglect of duty and want of due care for his own safety.''

In the case at bar, if the plaintiff fell for the reasons urged by defendants, there was no negligence in this act, which was one of the two causes which produced the injury. The other contributing cause is practically the conceded negligence of the city. So that on the evidence introduced by defendant, plaintiff was entitled to recover if the result was one which could have reasonably been anticipated to flow from the negligent act. Because deceased was diseased he was not precluded from walking upon the sidewalk. Nor is it a stretch of imagination to say that the city must know that afflicted persons of all kinds walk upon sidewalks.

This court has taken broad grounds as to what cases may be considered as falling within the rule of reasonable anticipation of results from negligence in different cases. In Dean v. Railroad, 199 Mo. 386, we have a case where the defendant had negligently overloaded the tender of its engine with coal, and in speeding along its tracks, a lump thereof was thrown off and struck and injured the plaintiff's knee. We held defendant liable. In so doing we approved a rule of law announced by the Iowa court. In that case, l. c. 411, we said: ''The fact that the effect in this case was somewhat unusual cannot defeat a recovery. The fact that but few accidents of this sort are recorded in the books cannot save the situation for defendant; for it is self-evident that the question of injury to a man's knee from a flying chunk of coal depends alone upon the coal and the knee coming in contact. If the

knee was not there, the knee would not be injured; if the knee was there, then—it is another story. In this case both the man and his knee were at a proper place, at a place defendant's lessee had reason to anticipate their presence. The rule of law controlling in this particular is thus formulated: 'The liability of a person charged with negligence does not depend upon the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything, which after the injury is complete, appears to have been a natural and probable consequence of his act or omission.' [Fishburn v. Railroad, 127 Iowa l. c. 492, et seq., and cases cited.]''

The doctrine of this case was cited with approval by the court In Banc in Zeis v. St. Louis Brewing Assn., 205 Mo. l. c. 651. Upon this theory we believe there is substance in plaintiff's claim, the cause is one which should be submitted to a jury. But it does not follow from this that it was properly submitted under the pleadings and instructions herein.

(c) But grant it that there is a right to have the jury pass upon this theory of the case, can this verdict and judgment stand? We think not. Plaintiff neither by her petition nor instructions presents this theory to the jury. Even if it be said that the petition is broad enough to cover this theory of the case, and we hardly think it is, yet the instructions for the plaintiff, and upon which the verdict was procured presented no such theory. We have recently had occasion to review such a condition in the case of Degonia v. Railway Co. That case is so recent and being from the court In Banc, after full consideration of two opinions from division, that we will not go over the matter again here. For the reasons expressed fully in that case this verdict and judgment should not be affirmed, but we are of opinion that the case should not be reversed outright, but that it should be reversed and remanded in order

that it might be proceeded with in accordance with the views herein expressed, and if need be that the petition may be amended so as to include the theory of the case discussed in this paragraph.

IV.   The defendant railway urges that there is no evidence that the rails which occasioned the injury were put there by it and for that reason its demurrer should have been sustained.

Plaintiff to prove the fact placed upon the stand one of this defendant's employees, and the evidence when considered as a whole is not of much probative force.   It is extremely questionable as to whether the plaintiff has sufficiently connected this defendant, but inasmuch as we have concluded to remand the case, we reserve that question and leave it open for proof upon a new trial.

The above conclusions obviate the discussion of other points made.   The judgment is reversed and cause remanded to be further proceeded with in accordance with the views hereinabove expressed.   All concur, except *Woodson, J.,* not sitting.