## CITY OF AUSTIN v. BRUNET.

### No. 7436.

Court of Civil Appeals of Texas. Austin.
April 23, 1930.

Rehearing Denied May 7, 1930.

J. Bouldin Rector and A. L. Love, both of Austin, for appellant.

J. A. Rauhut, Hardy W. Hollers, and Woodward, Hart, Gay & Hart, all of Austin, for appellee.

BAUGH, J.

Appeal is from a judgment in favor of appellee against appellant for $4,591.40, for damages for personal injuries suffered by appellee and resulting from a fall upon the sidewalk constructed by the city of Austin in front of a downtown fire station located adjacent to the city hall. Appellee at the time of her injury was on her way to the city hall to pay her water and light bills. The trial was to the court without a jury. No findings of fact nor conclusions of law were requested.

We shall not undertake a detailed statement of all the facts of the case. Congress avenue, the main business street of the city, runs north and south. Colorado street runs parallel to it one block west of it. Eighth street runs east and west, crossing them at right angles. The city hall facing south is located at the corner of Eighth street and Colorado street. Immediately east of it some 30 or 40 feet away is the fire station, which also faces south on Eighth street. From Colorado street to Congress avenue is down hill, making about a 15 per cent. grade in Eighth street and the sidewalk in front of the fire station, where the injury occurred. From the south property line of the city hall and of the fire station to the north curb or street line of Eighth street is about 21 feet, all of which area was paved by the city. To provide a passage for vehicles, however, between the fire station and the city hall, the street line curb was removed, and a ramp or driveway about 15 feet wide constructed, sloping to the level of Eighth street. Beginning, however, at the lower or east side of this ramp or driveway, and continuing down hill eastward with the north line of Eighth street, said curb line was continued some 27 feet to where it was again replaced by a ramp or driveway from the entrance to the fire station down to the level of Eighth street, over which the fire trucks passed into and out of the station. Except as to the ramps above mentioned, the paving from the property line out to the curb or street line was on the same level and so curbed as to be available for use only by pedestrians. A strip of the sidewalk about 8 feet wide next to the property line of the fire station and running westward uphill toward the city hall was finished with what was designated as a "float" or rough finish, for the purpose of giving pedestrians a more secure footing on it. Between this 8-foot strip, however, and the curb or street line in front of the fire station, the remaining portion of said paved area had been given a smooth, or "steel" finish, except where said ramps, which

also had a rough finish, crossed it, thus giving a much more slippery or insecure footing to pedestrians using it. At the time appellee was injured, all of said sidewalk was damp. She was walking westward on the rough strip of sidewalk in front of the fire station. When she reached the west edge of the ramp leading into the fire station, over which a porch or balcony extended, she left the rough surfaced portion of the sidewalk and stepped over near the curb on that portion with the steel or smooth finish, because, as she stated, it looked to her to be drier than the other, lost her footing on its slippery surface and fell, breaking her hip.

Her suit asserts negligence of the city in thus constructing its sidewalk in front of its property; and that such negligence proximately caused her injury.

Appellant predicates this appeal on three propositions:

First, that the city furnished her, in said 8-foot strip of rough-surfaced sidewalk, a safe and convenient way to her destination; and that there existed no reason for her to leave such safe way in reaching same.

Second, that in leaving such safe and convenient way so furnished for her to her destination, there being no obstruction therein, and in selecting a way obviously not as safe as the one which she was traveling, appellee was guilty of contributory negligence; and

Third, that the amount of the recovery was excessive.

■ No question is raised as to the legal duties of the city in the premises. The only issue was whether or not the city was guilty of negligence in constructing a "steel" finish, or smooth slippery surface, on its sidewalk at the point in question. The city appears to have taken the view that the paved portion outside of the rough-surfaced strip, between that strip and the curb, was not a part of its sidewalk proper, and that it had met its legal duties by providing said strip 8 feet wide properly surfaced. Such a position is untenable. The evidence clearly shows, not only that all of the paved portion between the property line and the curb or street line, including the smooth-surfaced portion, was habitually used by the public including the mayor and city commissioners for sidewalk purposes, but it also shows that the city officials had full knowledge of such use. In addition to such known use, we think that the fact that the city undertook to pave all of said space between its property line and the street line on the same level, and so constructed its curbs as to exclude all but pedestrians from the portion complained of, such conduct necessarily constituted the whole of said area a part of its sidewalk proper, and constituted an invitation to the public to use it as such. And the evidence showed that it was so used. Woodson v. Ry. Co., 224 Mo. 685, 123 S. W.

820, 821, 30 L. R. A. (N. S.) 931, 20 Ann. Cas. 1039; 36 Cyc. 440.

■ Having thus made it a part of its sidewalk, it was the duty of the city to use ordinary care to maintain it in such condition as to make it reasonably safe for the use of pedestrians. Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; H. B. & T. Ry. Co. v. Scheppelman (Tex. Com. App.) 235 S. W. 206; Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 668, 27 A. L. R. 927. And its failure to do so, would, of course, constitute negligence. Waco v. Ballard (Tex. Civ. App.) 246 S. W. 97, 98; Uvalde v. Stovall (Tex. Civ. App.) 279 S. W. 889.

■■ We think the evidence was amply sufficient to sustain the court's judgment, necessarily based upon a finding of negligence. Not only was the city charged with knowledge of the character of construction complained of, which was done by its agents (Austin v. Ritz, 72 Tex. 391, 9 S. W. 884; Waco v. Ballard, supra), but the evidence showed that agents of the city, including one of its commissioners, prior to appellee's injury, had their attention called to, and knew of, the dangerous and slippery character of the portion of the sidewalk complained of; and that pedestrians had slipped and fallen thereon by reason thereof. That the character of construction, that is, the "steel" or glazed finish, was improper at the place in question was established by the city engineer himself, who testified: "There is an engineering purpose in using this float finish, which is to give a more secure footing at that particular place, that is the purpose of the rough finish, and where you have a grade such as you have around in front of the fire station building it is correct practice for an engineer to use that float finish."

The portion of the sidewalk complained of, however, was not a "float" or rough finish, as would have been proper, according to said engineer's testimony; but was variously described by the witnesses as "very smooth," "slick," "slippery," "smooth as glass," and "very slick" and "steep and dangerous."

■■ Nor is there any merit in appellant's contention that appellee was guilty of contributory negligence. As a general proposition it is true that, where two ways of travel are open, one safe and the other unsafe, and one chooses to use the unsafe way with knowledge, actual or imputed, of its dangers, when a safe way is available, he cannot complain. But knowledge of the danger is an essential element in such choice. The cases cited by appellant are those where the dangers complained of were open, obvious, and known or clearly imputable to the injured party. In the instant case, the trial court having found against appellant on its defense of contributory negligence, our only inquiry is whether there is any evidence to support that finding.

Not only was the area where appellee fell a part of one and the same sidewalk maintained by the city, and commonly used by the public as such, but there was no open, obvious, or apparent object or circumstance which would separate it from that portion of the sidewalk which appellant insists that appellee could and should have used. The strip with the "float" or rough surface at the point in question was covered overhead by a balcony, and doubtlessly shadowed somewhat. It being a damp, misty day the surface showed to be wet. The smooth surface was out from under the balcony, and because of its texture, and perhaps more light thereon, appeared to appellee to be drier, and she chose to walk over it, not only not recognizing its dangers, but, as she stated, because it appeared to her to be a safer place to travel. Under such circumstances, we think the trial court's finding that she was not guilty of contributory negligence is clearly sustained by the evidence.

Nor do we sustain appellant's third contention that the amount of the judgment was excessive. Appellee was 67 years old at the time of her injury. Prior to her injury she was active and healthy, did her own house work, and was earning about $50 per month. After her injury she remained in a hospital for eight weeks in a helpless condition, suffering excruciating pains, confined between sandbags with weights attached to her injured limb to keep it in place, thus required to lie in one position all the time. After removal from the hospital she remained in bed another month, was then transferred to an invalid chair, and after several months was able to use crutches. Her injury occurred February 5, 1927. This case was tried on February 13, 1929, at which time appellee was still unable to walk without crutches and not able to do any work of any consequence. Her medical and hospital bills amounted to $591.40. In view of the nature and extent of the injury, the resulting suffering she underwent, and its continued character, the judgment was, under such circumstances, not excessive.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.