# ELLEN RYAN, Appellant, v. KANSAS CITY et al.

### In Banc, February 9, 1911.

1. **SIDEWALK:· Excavation: *Ordinary Care.*** A pedestrian is required to use ordinary care to discover defects or pitfalls in a sidewalk, and to use ordinary care to· avoid danger .if 'she discovers such defects or excavations. The duty of the city to keep its sidewalks reasonably safe, and the right of a traveler thereon to assume that such duty has been performed, means that the sidewalk can be safely used by a person in the exercise of ordinary and usual care.

   *Held,* by KENNISH, J., dissenting, that the law requires a city to keep its sidewalks in a reasonably safe condition, and the footman has the right to rely upon the presumption that the city has done its duty and that the sidewalk is in a reasonably safe condition and an instruction which tells the jury that, although plaintiff may not have known of the excavation in the sidewalk space into which she fell, "yet, if she should, by the exercise of ordinary care, have discovered the condition of the street at the point in question, and should, by the exercise of ordinary care, have avoided the same, then the. jury will find for the defendants," deprives her of this presumption, and is erroneous. If the city was negligent, and she did' not know of the excavation, then her failure to use ordinary care to discover it should not deprive her of the right to recover for her injuries.

2. **──── : ────: Police Regulations: Liability of City.** A city is not liable to a traveler on its streets or sidewalks for the mere failure to enforce its own police regulations enacted for the protection of its citizens, such as an ordinance requiring barriers and red lights to be put up at night at the end of an excavation in the sidewalk space made by a contractor preparatory to putting down a sidewalk. The city is liable for negligence, and having authorized and directed the work, may be liable for a failure to set up barriers and danger signals, but its liability for that failure would be upon the theory that such failure was negligence, and would depend upon proof of the same, rather than upon the ordinance.

3. **──── : ──── : ────: Liability of Contractor.** But as to the contractor, who had on hand the construction of the sidewalk and left a deep ditch in the sidewalk space, over night, without barriers or red lights, proof of the ordinance requiring him

to put up such barriers and lights, and proof of his failure to comply therewith, make out a prima-facie case of negligence against him in the suit by a traveler who fell into the ditch in the night time.

4. **THEORY OF TRIAL: Shifting Position On Appeal.** The plaintiff, who is appellant, cannot shift positions on appeal. She cannot on appeal urge that instructions given for defendant were erroneous, if those instructions were in harmony with her own, and submitted to the jury the same theory of defendant's duty and liability.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*M. A. Fyke* and *E. W. Shannon* for appellant.

(1) The plaintiff was not required to look for an excavation in the sidewalk. It was the duty of the defendants to keep such an excavation properly guarded and lighted. Plaintiff had the right to presume that the sidewalk was in a reasonably safe condition for use. Perrette v. Kansas City, 162 Mo. 238; Holloway v. Kansas City, 184 Mo. 29; Roe v. Kansas City, 100 Mo. 190; Drake v. Kansas City, 190 Mo. 385. (2) It is not claimed that the plaintiff had any knowledge of the excavation in the sidewalk and the defendants concede that she had no knowledge of such excavation by instruction 10-D, asked and given for defendants. Instructions 4-D, 5-D, 7-D, and 9-D asked for by defendants, and given, told the jury that if plaintiff, by the exercise of ordinary care, should have discovered the excavation in the sidewalk and have avoided it, she could not recover. All these instructions make it the duty of the citizen to inspect the sidewalks or streets for defects of which he has no knowledge. In the absence of knowledge the plaintiff had a right to act on the presumption that the sidewalk was in a reasonably safe condition for use. These instructions were improper. Heberling v. Warrensburg, 204 Mo. 604; Hitt v. Kansas City, 110 Mo. App. 713; Coffey v. Carthage,

186 Mo. 585; Russell v. Columbia, 74 Mo. 494; Barr v. Kansas City, 105 Mo. 560; Craney v. St. Louis, 141 Mo. 180. (3) Instruction 3-D, given for defendants, recites: "The failure, if any, on the part of defendant Kansas City, to enforce the ordinances requiring red lights and good and sufficient barriers not less than three feet high to be placed at night upon the excavation in the sidewalk space at the time and place in question was not in itself negligence on the part of the defendant Kansas City." And instruction 5-D recites: "Then you, the jury, are instructed that the failure, if any, of defendants to place lights or barriers at or near said excavation, if any, at the time plaintiff claims to have been injured does not make defendants liable." And instruction 9-D recites: "The jury will find for defendants, although they may further believe from the evidence that there were no barriers or lights." The ordinance requiring lights and barriers was pleaded and such failure to place such lights and barriers was pleaded as negligence; such failure was not only negligence, but was negligence per se. Skinner v. Stifel, 55 Mo. App. 9; Campbell v. Stanberry, 105 Mo. App. 56; Gerber v. Kansas City, 105 Mo. App. 191; Jelly v. Pieper, 44 Mo. App. 380; Fath v. Railroad, 105 Mo. 537.

*Francis M. Hayward* and *James W. Garner* for respondents.

The instructions given by the court were correct under the evidence in the case. Cohn v. Kansas City, 108 Mo. 387; Knight v. Baltimore, 97 Md. 647; Casey v. Malden, 163 Mass. 507; King v. Colon, 125 Mich. 516; Wheat v. St. Louis, 179 Mo. 578; Coffey v. Carthage, 168 Mo. 573; Mehan v. St. Louis, 217 Mo. 35; Harmon v. St. Louis, 137 Mo. 494; Loth v. Columbia Theatre Co., 197 Mo. 358; Moran v. Car Co., 134 Mo. 651.

IN DIVISION ONE.

GRAVES, J.—Plaintiff sues for personal injuries in the sum of ten thousand dollars. Verdict having been returned against her by a jury in the court below, she has appealed to this court. Complaint is. chiefly lodged against some of the instructions given for the defendant. In fact, the assignments of error go to the giving of six instructions *nisi* for defendants, and the overruling of the motion for new trial. The motion for new trial preserved these matters raised in the assignment of errors. This assignment requires, however, an outline of the pleadings and proof. As to the several given instructions the proof can best be discussed with the points made.

In her petition the plaintiff makes charges which can perhaps be somewhat summarized. To so do, pleading and proof can well be considered together to a certain extent. Defendant E. I. Harris was a contractor under defendant Kansas City. His business cognomen was the Missouri Sidewalk Company. The alleged accident to plaintiff occurred on the west side of Main street, between Thirty-ninth street and Westport avenue. Such street was admittedly under the control of the city, one of the defendants herein, and was a public thoroughfare of said city. It is admitted that under contract with the city, defendant Harris, contracting under the cognomen aforesaid, excavated on the west side of Main street in said city, and between Thirty-ninth street and Westport avenue, for the purpose of putting in a new sidewalk, a place about five feet wide, seventy-five feet long and one and one-half feet deep. This is charged to have been unsafe, but of course not admitted. As the gravamen of her charge against both defendants, the plaintiff, with proof of a dark and rainy night, plants herself upon sections 861 and 862, of article 6 of chapter 14, of the Revised Ordinances of said city, which read:

"*Lights and Barriers.* Every person who shall for any purpose, make or cause to be made, any excavation in, upon, under or near or adjoining any street, avenue, sidewalk, alley or other public place, and shall leave any part or portion thereof open, or shall leave any part or portion thereof obstructed with rubbish, building or other material, during the nighttime, shall cause the same to be enclosed with good, substantial and sufficient barriers not less than three feet high, and shall also place a red light at each end thereof in such a position as to shed its light upon such excavation or obstruction, and shall keep such lights burning from sunset to sunrise.

"Every person who shall in any manner render or cause to be dangerous any street, avenue, sidewalk, alley or other public place, shall from sunset to sunrise provide and properly place such barriers and lights around such dangerous place as are in the preceding section required."

After specifically charging in her petition a violation of these two sections of the ordinances, and that such violation constituted negligence, she then proceeds:

"Plaintiff further states that on or about the 30th day of September, 1905, at about 8:30 p. m., it was very dark and raining very hard, and plaintiff at said time in the exercise of ordinary care and diligence at about the hour of 8:30 p. m., between sunset and sunrise, was walking along the sidewalk on the west side of Main street and at a point on said sidewalk where the said excavation begun, and on the north end of said excavation, stepped off said sidewalk into said excavation in said sidewalk which was then partially filled with water and was thrown violently down into said excavation, and plaintiff thereby sustained severe injuries to her back, spine and womb; that plaintiff's womb was displaced and plaintiff suffered concussion of the spine and spinal column, injuring the nerves of the

spine, spinal cord and brain, causing curvature of the spine, spraining her back and causing her nervous system to become severely shocked and prostrated, injuring plaintiff's brain and eyesight, all of said injuries being permanent.''

After charging that all such injuries were due to the negligence of the two defendants, she asked for damages in the sum of ten thousand dollars, as aforesaid.

Defendant Kansas City answered thus: (1) It admitted that it was a municipal corporation, and denied all other matters, and (2) set up a plea of contributory negligence.

Defendant Harris answered (1) by a plea of general denial, and (2) by a plea of contributory negligence.

Replies to both answers were general denials.

Thus stand some of the admitted facts and the pleadings. The disputed facts, if any, can best be discussed in connection with the questions raised upon the instructions which are challenged. It should be said at this point that it is not seriously questioned that the two defendants occupy the position of contractor and contractee. Nor was it seriously questioned that plaintiff was a servant girl earning some five dollars per week prior to her alleged injury. The alleged accident occurred at or about 8:30 p. m. on September 30, 1905. It was raining at the time and the depression made by the excavation was filled with water. It is not denied that the lights and barriers required by the ordinance were not there at the time of the alleged injury. For defendants it was shown that there were numerous other lights in the neighborhood by which plaintiff in the exercise of ordinary care could have seen the unprotected place where she fell, but plaintiff in person says that at the time it was raining very hard and very dark and that there was ''no light of any kind at the excavation, neither was

there any barrier, and *I did not see that an excavation had been made where the sidewalk should have. been."* There are a great number of witnesses for defendants who testify to the lighted condition of the place from other lights. One of the chief contests seems to have been upon the question of plaintiff's injury, if any. The diverse testimony upon this question need not now be considered. Further facts bearing upon the questioned instructions will be discussed in the course of the opinion. This sufficiently states the case.

I. Of the instructions complained of, five of them possess the same alleged fault. Instruction "4-D" will serve to illustrate and reads:

"The court instructs the jury that if you believe from the evidence that there were lights along the street burning on the night in question and the light cast from them was sufficient to light the place where plaintiff claims to have fallen so that plaintiff by the exercise of ordinary care and the use of her eyes and other senses ought to have known of the excavation, if any, in the sidewalk and ought by the exercise of ordinary care to have avoided the same, then the plaintiff cannot recover and your verdict must be for defendant Kansas City."

It will be observed that this instruction requires of the plaintiff the use of ordinary care to discover defects in the sidewalk upon which she was traveling and the use of ordinary care to avoid danger if she discovered defects. To the first requirement plaintiff objects. She contends that unless she knew that there was a defect in the sidewalk she had a right to assume that the city had performed its duty and such sidewalk was in a reasonably safe condition for travel, and thus this instruction placed upon her a burden she did not have to carry. Among other cases, the plaintiff plants herself behind the doctrine of Heberling v. Warrensburg, 204 Mo. 604. The rule announced in the

Heberling case to our mind sustains her contention. In that case the plaintiff was defeated before a jury, but the trial court set aside the verdict because it was impressed with the idea that error had been committed against plaintiff in giving an instruction thus worded: "The court instructs the jury that if you find and believe from the evidence that the plaintiff knew, or by the exercise of ordinary care could have known of the rut or depression in the street at the place where plaintiff claims to have been injured, and by the exercise of ordinary care could have avoided it, then your verdict will be for the defendant."

This instruction was condemned by our brothers in Division Two, and the trial court sustained in granting the plaintiff a new trial. There is an attempt to harmonize the Heberling case with the previous case of Coffey v. Carthage, 186 Mo. 573, but to my mind they do not harmonize. In the Coffey case, supra, Fox, J., said:

"If, by the exercise of a reasonable degree of care and caution, she could have discovered the defect or hole in the sidewalk, and avoided the injury, it was incumbent upon her to do so, and if she failed to comply with this duty that every citizen owes the city, and proceeded carelessly and without paying any attention to where she was walking, then there can be no recovery. [Wheat v. St. Louis, 179 Mo. 572, and cases cited; Phelps v. Salisbury, 161 Mo. 1; Jackson v. Kansas City, 106 Mo. App. 52; Churchman v. Kansas City, 44 Mo. App. 665.]

"In Wheat v. St. Louis, supra, after a careful, thorough and exhaustive review of all the authorities, the rule was thus very aptly and tersely stated: 'While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is fa-

miliar with or which by the exercise of ordinary care he could discover and easily avoid.' "

It is clear that Judge Fox was following the case of Wheat v. St. Louis, 179 Mo. 572. In the Wheat case, MARSHALL, J., speaking for Division One of this court said: "In short the rule is supported not only by the almost universal trend of authority, both English and American, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is familiar with *or which by the exercise of ordinary care he could discover and easily avoid*. And while the city may be negligent in the discharge of its duty, the citizen may also be negligent in the discharge of his duty. And if both are negligent and their negligence contributes to the injury, there can be no recovery."

The italics in this quotation are ours. It may be that there was no necessity in that case for the use of all the language used, inasmuch as the evidence in Wheat's case showed that the plaintiff in fact did have knowledge of the defect, but to our mind it was purposely used by the court.

In Woodson v. Met. St. Ry. Co., 224 Mo. 685, the writer was confronted with this exact question, and reviewing the authorities, said this:

"In the case of Wheat v. St. Louis, 179 Mo. l. c. 581-2, this court said: 'In short the rule is supported not only by the almost universal trend of authority, both English and American, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is familiar with *or which by the exercise of ordinary care he could discover and easily avoid*. And while the city may be negligent in the dis-

charge of its duty, the citizen may also be negligent in the discharge of his duty. And if both are negligent and their negligence contributes to the injury, there can be no recovery. And if the plaintiff's negligence necessarily contributes to the happening of the injury, there can be no recovery.'

"To a like effect is Kaiser v. St. Louis, 185 Mo. l. c. 374: 'Moreover, the plaintiff had driven along that particular part of the street every day for at least ten days, and he therefore knew *or could have known by the exercise of ordinary care,* that the pile of earth was there, and as it was no larger than a bucket, he could have easily avoided it, if he had used his senses and the degree of care that is required of one who drives a wagon on a public highway.' The italics in the foregoing quotations are ours. We simply desire to impress that it is the duty of a traveler to exercise ordinary care in traveling upon the public highways.

"Again in Coffey v. Carthage, 186 Mo. l. c. 585, the rule of conduct of a traveler upon the highway or sidewalk (in that case a sidewalk) is thus stated: 'The law upon this proposition may thus be briefly stated: If plaintiff had no knowledge of the defect or hole in the sidewalk, then she had the right to assume that the sidewalk was in a reasonably safe condition. But while she was entitled to act upon this assumption, still she must exercise that degree of care and caution in walking on said sidewalk which a prudent person ordinarily employs under similar circumstances. If, by the exercise of a reasonable degree of care and caution, she could have discovered the defect or hole in the sidewalk, and avoided the injury, it was incumbent upon her to do so, and if she failed to comply with this duty that every citizen owes the city, and proceeded carelessly and without paying any attention to where she was walking, then there can be no recovery.'

"In Cohn v. City of Kansas, 108 Mo. l. c. 393, Judge BLACK said: 'While in general it is for the jury to say

whether the plaintiff used ordinary care; and this question they are to determine from all the circumstances, still it often occurs that the court may declare the plaintiff wanting in due care on given facts. One who attempts to cross over a sidewalk as part of a road, known to him to be dangerous, when the dangerous place could have been easily avoided, as by passing around it, or taking another side of the road, is wanting in due care, and the court may so say as a matter of law.'

"The Iowa court puts the rule thus in the case of Yahn v. City of Ottumwa, 60 Iowa 1. c. 433: 'It was not claimed that the husband's attention was in any manner diverted from properly driving the team after he took his seat in the wagon. The accident happened in broad daylight. Now, if the stone was in full view of the husband when he started the team, it was his plain duty to have seen and avoided it. The defendant requested the court to instruct the jury, "that it was the duty of the plaintiff's husband to use care in driving, and to look where he was driving, and to avoid all obstacles which were dangerous in their character and which were plainly visible and not obscured, and if he failed to do so, and the plaintiff was thereby injured, then she cannot recover." This instruction was refused. We think this, or some other explicit instruction applicable to this view of the facts of the case, should have been given. Where an obstruction is in the street in plain view of the driver of a vehicle, and his attention is in no manner diverted so as to excuse him for not seeing the obstruction, and he drives against it or into it, he is clearly guilty of contributing proximately to any injury which may result.'

"It is not worth while going to other States for authority. The rule could not be more clearly stated than in the Coffey case, supra, as to the duty of travelers to exercise ordinary care in walking over side-

walks. Now plaintiff's testimony shows that these rails were easily seen, and that deceased was leaving the usual pathway, to go upon that part of the space not especially prepared for travel, although deceased had the right to travel it. We are satisfied that if deceased was at himself at the time, the exercise of ordinary care upon his part would have avoided the accident. The cases supra are the latest utterances of this court upon the question, and it would serve no good purpose to further review the case law of the State, or of other States. To the mind of the writer it would appear that these last expressions of the court lose sight of the idea that a pedestrian can assume whilst walking over a sidewalk that the city has performed its duty and that the sidewalk is reasonably safe for travel. But both divisions of the court have concurred in the doctrine of these late cases and we feel that they should be followed.''

We did not have before us at that time the Heberling case. It was not cited in the briefs and our investigation did not bring it to our consideration. It will be observed that we expressed some doubt as to the rule announced in the Wheat and Coffey cases. The last few lines of the quotation would so indicate. Whether that doubt is or was well founded is immaterial here. If the Wheat Case and those following it announced the law, then there is a conflict between our own opinions. The Heberling Case is not in line. Under the Heberling case these several instructions in the case at bar are erroneous. Under the other cases they are not erroneous. Upon more mature reflection I am of the opinion that the rule announced in the Wheat Case and its successors is correct. The city is not an insurer of its sidewalks nor of the safety of pedestrians. The law only imposes the duty of having sidewalks reasonably safe for travel. The law does not say they must be *safe,* and thus insure the pedestrian. To say that the city must keep its sidewalks reasonably

safe, and that the pedestrian may assume that such duty has been performed, does not mean that the pedestrian may walk thereon studying the stars, or blinded as a bat. Reasonably safe means that such walks can be used by a person in the exercise of ordinary and usual care. It means that whilst they are not absolutely safe, yet the pedestrian can use them with safety to himself, if he uses ordinary and usual care for his own safety. As stated above the pedestrian cannot be engaged in the study of astronomy and blindly fall into a ditch when the light of day, or its substitute, arc lights at night, would show the danger if such there was. Nor does it mean that the pedestrian must keep his eyes riveted upon the sidewalk at each step of his progress. Ordinarily prudent and careful persons do neither. Such persons are not star-gazing nor are they guarding each individual step they take. They do, however, use their senses to see that they do not encounter danger, and this without considering that they may assume that the city has fully performed its duty.

We are of the opinion that these several instructions properly declare the law upon this point, but believe that the case should be certified to the Court in Banc to the end that there may be no question as to the rule of law announced by this court. The present status of our opinions on the point cannot be satisfactory to either bench or bar.

II. The next contention is that there was error in giving instruction numbered "3-D," which reads:

"The court instructs the jury that the ordinances of Kansas City relating to lights and barriers read in evidence of themselves create no liability in favor of persons injured by their violations as against defendant, Kansas City, and that therefore the failure, if any, on the part of Kansas City, to enforce the ordinances requiring red lights and good and sufficient barriers

not less than three feet high, to be placed at night upon the excavation in the sidewalk space at the time and place in question was not in itself negligence on the part of the defendant, Kansas City, and that you must only consider the same against the defendant, Kansas City, in conjunction with all the other facts and circumstances in making up your verdict.''

This instruction was given on behalf of the defendant city. It does not include the individual defendant. These ordinances are but police regulations adopted by the city for the purposes of protecting its citizens. A city may be liable for negligence, but is not liable for the mere failure to enforce its own police regulations.

In Moran v. Pullman Palace Car Co., 134 Mo. l. c. 651, SHERWOOD, J., said: ''In the third place, a city is not liable for damages resulting from a failure to enforce such police regulations as are the ordinances in question. [15 Am. and Eng. Ency. Law, 1154, and note 3, and cases cited.]''

One section of the ordinance discussed in the Moran Case is substantially the ordinance involved here. The doctrine of the Moran Case is approved in the following more recent cases: Harman v. St. Louis, 137 Mo. 494; Loth v. Columbia Theatre Co., 197 Mo. l. c. 358; Mehan v. St. Louis, 217 Mo. 35.

None of these cases are exact parallels of the one at bar, however. In the case at bar, under the testimony of the defendant Harris, which is the only testimony upon the subject, the relationship of contractor and contractee exists. In other words, the city in this case had contracted with Harris to do this work. This, however, we hardly think should change the rule. The ordinances within themselves do not appear to include the city. They appear to be pure police regulations enacted by the city for the guidance of the conduct of the citizen rather than the conduct of the city itself.

The city, having authorized and directed the work,

may be liable for the failure to have barriers and danger signals, but this would be upon the theory that to fail to have such would be negligence, and would depend upon proof of the question rather than upon the ordinance. As to defendant Harris, proof of the ordinances and proof of a failure to comply therewith, make out a prima facie case of negligence. This instruction does nothing more than to say, that as against the city, the ordinances themselves do not make a prima facie case, but may be considered with other facts in determining the question of negligence or no negligence upon the part of the city. This contention of plaintiff should be disallowed upon the law.

But there is another matter which forces the disallowance of plaintiff's contention. Plaintiff below adopted the theory of the law just above announced. She by her instruction "1-P" tells the jury that if there was a failure to comply with these ordinances, and the plaintiff was injured by reason of such failure, the same would be negligence as to defendant Harris and he would be liable. By her instruction "2-P" the case is put to the jury upon the theory that if there was a failure to put up barriers and lights, and that an ordinarily careful and prudent person would have used such precautions, then both defendants were negligent, and if plaintiff's injury was due to such negligence she could recover as against both defendants. From this it appears that she adopted this theory of the law below, and the instruction given for defendant city, last above set out, is in line with the theory that plaintiff had in the trial *nisi*. Plaintiff can't shift positions in this court. It is true that the motion for a new trial suggests that the court erred in modifying the two instructions of the plaintiff above mentioned, but the record elsewhere fails to so show. The record simply says, "And thereupon the following instructions were given for the plaintiff." Following this are the two instructions discussed, and a third one which re-

lates solely to the measure of damages. So that upon this theory we would not be in position to condemn the lower court for giving an instruction for the defendant which accorded with the theory of the case pressed upon the court by the plaintiff.

The question discussed in paragraph one, and the one herein discussed, are the only ones seriously urged by counsel. If we are right in the conclusions reached in paragraph one, and we think we are, this case should be affirmed. Yet, we are of opinion that there is a conflict between our own cases upon the question discussed in paragraph one, and for that reason this cause should be certified to the Court in Banc for final determination. It is therefore ordered that the cause be certified to the Court In Banc.

All concur upon the question that this cause should be certified to the Court in Banc.

## IN BANC.

GRAVES, J.—The foregoing opinion in Division One is adopted as the opinion of the Court in Banc.

*Ferriss, J.*, concurs; *Lamm, J.*, concurs in separate opinion filed; *Brown, J.*, concurs in result; *Woodson* and *Kennish, JJ.*, dissent in opinion to be filed; *Valliant, C. J.*, absent.

## SEPARATE CONCURRING OPINION.

LAMM, J.—In voting to affirm, I concur with the result, but not to all my learned brother GRAVES says, *arguendo*. I put concurrence on the following grounds:

Plaintiff asked no instruction covering her right to act upon the presumption that the sidewalk was reasonably safe. There is a presumption of that kind that may go to the jury. But, if plaintiff desired such instruction, her counsel should have asked it. Non-direction in a civil case is not misdirection. While a

footman may presume a city has done its duty in keeping its sidewalks in a reasonably safe condition for travel by pedestrians, by night as well as by day, yet that presumption runs with a condition. It goes hand in hand with another vital proposition, viz., that a footman must use ordinary, that is, due care to avoid injuring himself. Such care is the care of an ordinary person under like circumstances. Such care is broad enough to create the duty to look and see where one is going as well as the duty to avoid danger when actually discovered. That does not mean a pedestrian is an *inspector* of sidewalks or cannot take a step without looking down to see that his feet do not carry him into a pit, nor does it mean that an ordinarily prudent person might not be deceived into taking an excavation full of water as part of the sidewalk at night in the glimmer of electric lights or during a storm. He need not be watching at every footfall for defects, but he should act like a prudent person, who makes reasonable use of his eyes while walking. He cannot shut his eyes, or blindfold himself, or walk backward, or not look about him at all, or, under the assumption no defects exist, walk heedlessly into obvious ones.

Defendant's instructions announce good doctrine in that respect. Due care allows a reasonable person to act on the presumption of safety so long as (and no longer than) he uses due care to avoid his own injury. To rule that a plaintiff could be cast only when he actually knows of the defect, and thereafter acts negligently, is a dangerous doctrine I cannot subscribe to. He must use due care to discover in order to avoid. The jury take the presumption along with the proposition of due care in making up their estimate of liability, when plaintiff sees to it they get the presumption along with defendant's instruction on due care.

As the Heberling case is questioned, I may as well say that I think that case goes too far in some of its general language. But the case was soundly ruled,

considering the facts. Plaintiff was driving, not walking. The real defect was concealed. The mere presence of the surface water and mud threw no duty on plaintiff to avoid the place in a muddy time. The defect was caused by the *depth* of the hole or rut and sprung from the negligence of the town. The depth was concealed by the surface mud and water. Taking the facts of that particular case and construing the law discussed with the facts, as we must, the result reached was well enough. No reasonable care would have avoided the concealed and hidden danger in the Heberling case.

## DISSENTING OPINION.

KENNISH, J.—I cannot concur in the opinion of the court, or in the concurring opinion, delivered in this case, for the reason that the law, as declared therein, is not only in conflict with the former decisions of this court and the current of authority upon that subject, but also because, under the facts of this case, the law as thus announced deprives a traveler upon a sidewalk in a city of the benefit of a principle of law, the existence of which both opinions concede. [Heberling v. Warrensburg, 204 Mo. 604; Perrette v. Kansas City, 162 Mo. 238; Hitt v. Kansas City, 110 Mo. App. 713; Langan v. Railroad, 72 Mo. 392; Porter v. Railroad, 60 Mo. 160; Mathews v. Cedar Rapids, 80 Iowa 459; Earl v. Cedar Rapids, 126 Iowa 361; Kaiser v. Hahn, 126 Iowa 561; Ryan v. Foster, 137 Iowa 737; Lerner v. Philadelphia, 21 L. R. A. (N. S.) 614, and authorities cited and reviewed in the annotation of that case; Elliott on Roads and Streets, page 678.]

The importance of the subject and the conviction that the court has taken an erroneous view of the law requires, and is my apology for, a brief discussion of this case and the cases relied upon and referred to in the majority opinion.

The facts of this case, as well as the instructions given on behalf of the city and of which complaint is made on this appeal, are stated fully and fairly to the appellant in the opinion of the court herein. However, as appellant complains of error in the giving of four separate instructions, and as defendant's instruction numbered 10-D more sharply presented to the jury the alleged error complained of, I shall set that instruction out and use it as a basis for what is here said, rather than instruction numbered 4-D, which is taken as typical and set out in the opinion of the court. It is as follows:

"The jury are instructed that it was not necessary for the plaintiff to have had actual knowledge of the excavation in the street, if any, for such knowledge to be imputed to her. Although the plaintiff may not have known of the excavation, if any, yet, if she should, by the exercise of ordinary care, have discovered the condition of the street at the point in question and should, by the exercise of ordinary care, have avoided the same, then the jury will find for the defendants."

It is conceded by all that it is the duty of the city to keep its sidewalks in a reasonably safe condition for travel and that the pedestrian has the right to rely upon the presumption that the city has done its duty and that the sidewalk is in a reasonably safe condition. Notwithstanding the foregoing presumptions of the law, recognizing on the one hand the duty of the city and on the other the presumption in favor of the footman, under which as said, he may "walk by a faith justified by law," this court approves an instruction which told the jury that although the plaintiff did not know of the excavation in the sidewalk, "yet if she should, by the exercise of ordinary care, have discovered the condition of the street at the point in question," and by like care could have avoided the same, the jury should find for the defendants.

It is apparent, upon a mere statement of this prop-

osition, that the presumption upon which plaintiff was entitled to rely, was entirely ignored, and she stood before the jury not protected by the presumption that the walk was safe but, as a condition to her right of recovery, was required to have used ordinary care to have discovered the pitfall which the city had negligently permitted to remain in the sidewalk in the nighttime, unguarded by signal or barrier. This instruction, when considered in connection with the presumption upon which plaintiff had the right to rely, leads to the unreasonable result that the plaintiff might travel the street, relying upon the presumption that it was in a reasonably safe condition while, at the same time and place, she was required to use ordinary care to discover whether or not it was in fact in a reasonably safe condition. The answer to such an anomalous doctrine was well stated in the unanimous opinion of Division Number Two of this court in Perrette v. Kansas City, 162 Mo. l. c. 250, in which Burgess, J., speaking for the court, said: "It is asserted that the action of the court in refusing the sixth instruction asked by defendant was reversible error. The argument is, that although defendant may have been guilty of negligence in failing to keep its sidewalk where the accident occurred in a reasonably safe condition for travel, yet, if plaintiff failed to use ordinary care in discovering the condition of the sidewalk, and by reason of such failure he was hurt, he was not entitled to recover. The law, however, did not impose upon plaintiff the duty of looking for defects in the sidewalk, which in the absence of knowledge of its dangerous condition he had the right to assume was reasonably safe for travel; hence, no error was committed in refusing this instruction."

And in the case of Hitt v. Kansas City, 110 Mo. App. 713, in discussing the same subject, the court said: "It is insisted that plaintiff had ample opportunity for knowledge of the condition of the sidewalk

to have avoided the injury. If the fact that the place was well lighted is to be taken as conclusive evidence against her, then defendant's contention is correct; otherwise, it is not. That is all the evidence in the case that would have justified the jury in finding that the plaintiff was not in the exercise of ordinary care. If she had looked for the defect she would undoubtedly have seen it. But she was not required to do this. She had the right, in the absence of knowledge to the contrary, to feel secure, presuming that the city had performed its duty in keeping its sidewalks safe; and the fact that the place was well lighted was no evidence of itself, unsupported by any other fact, showing want of care or negligence on her part. . . . . If she had had knowledge of the condition of the sidewalk before she stepped into the hole there would have been no such presumption. But so long as it was shown that the defect was there and unknown to plaintiff, she had the right to presume that it was safe.''

In Langan v. Railroad, 72 Mo. 392, in discussing the question of alleged contributory negligence upon the part of the plaintiff, this court said: ''Negligence is not imputable to a person for failing to look out for a danger, when, under the surrounding circumstances, the person sought to be charged with it had no reason to suspect that danger was to be apprehended.''

In the case of Heberling v. Warrensburg, 204 Mo. 604, Judge GANTT, voicing the unanimous opinion of Division Two of this court, condemned an instruction containing the same identical doctrine as is approved in the opinion in this case, and upon facts, so far as the principle of law is concerned, not at all dissimilar from the facts of this case. As concisely stated in the syllabus of that case, the court held: ''It is not the duty of a person traveling on a public street to examine the street for defects, but he may act upon the presumption that it is reasonably safe so long as he conducts himself as a reasonably prudent person would

do under like circumstances." And the court quoted, with approval, from the Perrette Case, supra, that: "The law, however, did not impose upon plaintiff the duty of looking for defects in the sidewalk, which, in the absence of knowledge of its *dangerous* condition, he had the right to assume was reasonably safe for travel."

The opinion in this case concedes that there is a conflict between the law as therein declared and the Heberling Case, but holds that the latter case is not in harmony with Wheat v. St. Louis, 179 Mo. 579; Coffey v. Carthage, 186 Mo. 585, and Woodson v. Met. St. Ry. Co., 224 Mo. 685. An examination of these cases will show that so far as they announce a different doctrine from that of the Heberling, Perrette and Hitt Cases, supra, they are founded mainly upon what is a pure dictum in the Wheat Case, and upon an Iowa case which, it is respectfully submitted, lends no support to the correctness of the defendant's instructions in this case. The Iowa case, Yahn v. City of Ottumwa, 60 Iowa 429, cited and relied upon as authority in the Wheat Case, supra, and again in this case, has been commented upon and distinguished in the later case in that court of Mathews v. Cedar Rapids, 80 Iowa 459, which will be found to be express authority against the law as announced by the court in this case.

The law, as announced by the Supreme Court of Iowa in that case, is affirmed by that court in the three later cases cited at the beginning of this dissenting opinion, in one of which, namely, the Earl Case, it is said: "Of course, one cannot close his eyes and walk blindly and heedlessly into a place of danger. On the other hand, he is not bound to be on the lookout for hidden dangers. All that is required of him is that he walk with his eyes open, observing his general course, and in the usual manner."

In view of the fact that both the Heberling Case and the opinion in this case, which admittedly hold op-

posing doctrines, claim to be in accord with the Coffey Case, I shall not discuss the latter case further than to say that upon an examination thereof it will be found to require not alone an absence of ordinary care upon the part of the plaintiff, as constituting contributory negligence but, in addition, the affirmative conduct that she "proceeded carelessly and without paying any attention to where she was walking." It was not held in the Heberling Case, nor is it now claimed to be the law, that a footman may go along the sidewalk carelessly, paying no attention to where he is walking, so that he would fail to see plain and obvious obstructions and when injured thereby not be guilty of contributory negligence, but there is a wide gulf between that character of conduct of a footman and that which requires him to use ordinary care to discover defects in a sidewalk which he has the right to assume is safe.

The cases relied upon by the majority opinion go back, for authority to uphold the doctrine of defendant's instructions, to the case of Wheat v. St. Louis, supra. It is shown by the facts of that case that the plaintiff, in the daytime, drove upon an elevation in the street around a manhole, without noticing the obstruction; that his wagon was turned over and the plaintiff was injured, and that "plaintiff knew all about the manhole and had seen it and had driven around it every day for a year." Upon that state of facts, this court, in holding that the plaintiff was not entitled to recover, outside of the facts of the case in judgment, said it was the duty of the citizen to use his "God-given senses and not to run into obstructions that he was familiar with *or by the exercise of ordinary care he could discover and easily avoid.*" It is obvious that the clause which the writer has italicized sought to state the law upon facts not before the court, and that the decision to that extent is not binding upon this court as a precedent. A number of cases cited in that case

support the doctrine that where a person *knows* of a defect or obstruction in the highway, he must use ordinary care to avoid it, but as it is not held in any of the cases relied upon and cited in this dissent that the presumption of the safe condition of the sidewalk ever obtains in favor of a person who has actual knowledge of its unsafe condition, the use of the Wheat Case and the cases therein cited, as a foundation for the doctrine of the court in this case, is like building a house upon the sand.

The instruction in Yahn v. City of Ottumwa, supra, cited in the decision herein, and hereinafter set out, will be found widely different from the instructions in this case. Reviewing the Yahn Case, the Iowa Supreme Court, in the case of Mathews v. Cedar Rapids, supra, in which the former case was cited by one of the parties as sustaining the principles of law announced by the court in this case, said: "Appellees cite with much confidence the case of Yahn v. City of Ottumwa, 60 Iowa 429, to support the instruction given; but there is a clear distinction. In that case the plaintiff and his wife were just starting with their team on a street in the defendant city, when the wheel of the wagon struck a stone; and the wife was injured by falling from the wagon. The court refused an instruction to the effect that 'it was the duty of the plaintiff's husband to use care in driving, and look where he was driving, and to avoid all obstacles which were dangerous in their character, and which were plainly visible, and not obscured; and if he failed to do so, and the plaintiff was thereby injured, then she cannot recover.' This court held that the instruction asked, or some other applicable to the view of the facts stated, should have been given, and said: 'When an obstruction is in the street, in plain view of the driver of a vehicle, and his attention is in no manner diverted so as to excuse him for not seeing the obstruction, and he drives against it or

into it, he is clearly guilty of contributing proximately to any injury which may result.' It was a case of an obstruction on the surface of the street, against which there is no presumption. All persons know that temporary obstructions occur on streets and sidewalks; and it is not an unreasonable rule to hold that if in plain sight, and there is nothing to divert the attention of the traveler, he must notice them. The distinction is this: Such obstacles as are known to be present—as for instance, boxes and barrels on a sidewalk, and vehicles, building material and rubbish in the street— challenge the attention of the traveler; and if, without excuse, he fails to observe them, and encounters them to his injury, the judgments of men would agree that he is negligent. But matters which he may not anticipate as likely to occur, do not challenge such attention; and a failure to observe and avoid them is not, as a matter of law, negligence. It is also true that what might, as a matter of law, be diligence on a sidewalk, would not be in driving a team on a public thoroughfare in a city. Greater watchfulness to avoid accident in the latter case is certainly demanded, and for manifest reasons. . . . The two special findings to the effect that the light was sufficient to enable a person to see the opening, and that if plaintiff had looked he could have seen it, do not change the result; for we have considered the case upon the theory of such being the facts.''

Applying the law of that case to the facts of the case before us, we find that instead of requiring the plaintiff to use ordinary care to discover a defect in the sidewalk, it is held that even if the plaintiff could have discovered the defect had she looked, it would not follow that she was guilty of contributory negligence for not having done so, and for the reason that she had the right to rely upon the presumption that the sidewalk was safe. Reliance upon that presumption

does not mean that a person may go along the street, as the plaintiff in the Coffey Case, proceeding carelessly and without paying any attention to where she is walking, and be free from negligence, for persons in all relations of life are required to use care and caution, but it does mean that the multitudes who ·every day and night travel the sidewalks of our cities are not required as a condition precedent to a recovery for an injury received, to use ordinary·care to discover defects in the sidewalk. If they are going about their business, not looking for or thinking about dangers, relying upon the belief that the walk is safe, looking where they are going, and seeing and avoiding obstructions which are plainly obvious, they shall not be held at fault and denied redress merely because they did not use ordinary care to discover an unguarded excavation into which they may have fallen and which, under the law, they had a right to presume did not exist.

It was stated at the outset of this dissent that the opinion of the court is opposed to well considered former decisions of this court and the current of authority upon the subject, and it is now submitted that an examination of the many cases cited in support of the law as herein contended for will fully bear out that statement. *Woodson, J.*, concurs in this opinion.