**Daniel E. DRURY, (Plaintiff) Appellant,**

**v.**

**The CITY OF ST. LOUIS, a Municipal Corporation (Defendant) Respondent.**

**No. 49419.**

Supreme Court of Missouri,

Division No. 2.

May 13, 1963.

James C. Jennings and Milton R. Fox, St. Louis, for appellant.

Thomas J. Neenan, City Counselor, James J. Gallagher, Assoc. City Counselor, St. Louis, for respondent, City of St. Louis.

BARRETT, Commissioner.

While traveling along Wyoming Avenue, about 40 feet west of Jefferson Street, at 12:15 A.M., on September 25, 1960, Daniel E. Drury, now 21, attempted to jump over the parkway area and fell into the street. To recover $20,000 damages for his resulting personal injuries Dan instituted this action against the adjoining property owners and the City of St. Louis claiming negligence on their part in the maintenance of an iron railing in the edge of the parkway alongside the sidewalk. Upon the trial of the cause a jury exonerated the property owners but returned a verdict against the city for $2,000. Both the city and the plaintiff have appealed. The plaintiff claims that the court abused its discretion in not setting aside the verdict and granting him a new trial upon the issue of damages only. The city claims, as a matter of law, that Dan was guilty of contributory negligence and that therefore the court erred in not sustaining its motions for a directed verdict.

The fence or railing along the Wyoming Street sidewalk extends 59 feet from a mailbox at the Jefferson Street sidewalk to a concrete walk and entrance to the adjoining property. The railing consists of iron pipe one foot high, fastened together in five foot lengths. There is also a railing on the opposite side of the sidewalk, extending around the landowners' yard, also around the parkway and yard on Jefferson Street. There are similar guardrails around 40 or 50 pieces of property in the Chippewa-Arsenal Street area of St. Louis and they have been there for many years. On September 25 Dan and five other young men from their neighborhood attended a wedding reception at Lyons Hall on Jefferson Street. They parked their automobile on the west side of Wyoming about 200 feet north of Jefferson at 9 o'clock and walked to the hall. They remained at the reception about three hours in which time Dan says he had "3 or 4 beers." When the guests left the reception it was "raining hard," the young men had no raincoats, and Dan ran down Jefferson to Wyoming. He took a "short cut" because he was in a hurry and wanted to avoid getting wet. Instead of using the sidewalk on Jefferson and crossing the street in the sidewalk area, Dan continued on down Wyoming for a distance of approximately 20 feet to the point where he "wanted to go out into the street, (and) instead of stepping in the mud and that with my good clothes on, I wanted to jump out on the street; when I did my foot caught on the bar" and he landed in the street "flat on my face." There was a lamppost on the corner directly opposite the mailbox but Dan says that "it didn't cast enough light" and he did not see the railing until he looked back after the fall. Furthermore, he did not see the iron railing as he walked down Wyoming Street at 9 o'clock. On direct examination he testified that he did not know that the guardrail was there and did not see it before he fell and was injured. At one point in his testimony on

redirect examination he was asked "what he looked at," or "where he was looking," and his answer was "Well, traffic."

 But this case is not comparable in all respects to the sidewalk cases upon which the plaintiff as well as the city relies, —Seitter v. City of St. Joseph, (Mo.App.) 358 S.W.2d 263; Cline v. City of St. Joseph, (Mo.App.) 245 S.W.2d 695; Butler v. City of University City, (Mo.App.) 167 S.W.2d 442, and 37 A.L.R.2d 1187. These cases are analogous and helpful only in so far as they assert certain general principles applicable to both sidewalks and parkways, for example, as to a pedestrian's duty to look where he is walking, even though he may assume that the city has performed its duty. Ryan v. Kansas City, 232 Mo. 471, 134 S.W. 566, 985. While the parkway area, here the unpaved area between the sidewalk and the curbing, is a part of the public street, it is of course designed for different purposes than either the sidewalk or the street. But a pedestrian may use the parkway and the fact that it is not primarily designed for pedestrian travel does not absolve the municipality of liability in all circumstances. Fockler v. Kansas City, 94 Mo.App. 464, 68 S.W. 363; Bean v. City of Moberly, 350 Mo. 975, 169 S.W.2d 393. Nevertheless, "It should be observed that the different primary functions of the street or sidewalk, as opposed to those of the parking, afford a basis for the difference in degree of care owed by a municipality to pedestrians or drivers of vehicles over such areas. A sidewalk is designed primarily for pedestrian travel. To permit such area to become rough of surface, to place objects of utility or ornamentation in the path of travel would be negligence of itself. Not so with the parking. Here it must be expected that such conditions will exist, and even though pedestrians may be expected to walk across such area they cannot complain of a grassy or uneven surface, or of utility poles or fixtures, or of trees or shrubs in their path." Annotation, 19 A.L.R.2d, 1053, 1055, ("Liability for injury on parking or strip between sidewalk and curb"); 19 McQuillin, Municipal Corporations, Sec. 54.38, p. 138.

This statement of the general rule with respect to parkways deals with the city's duty and liability and in this case the city does not contend that there was no evidence of its negligence in the maintenance of the guardrail. And because of the city's tacit admission it is assumed, solely for the purposes of this opinion, that the inference of negligence was permissible in the circumstances. The question to be determined here is whether under the undisputed facts the plaintiff was guilty of contributory negligence as a matter of law. Sloan v. American Press, 327 Mo. 470, 474, 37 S.W.2d 884.

As Dan ran down the street in the rain, he took a "short cut" to reach the parked automobile. He did not proceed onto and across the sidewalk and the sidewalk area of the street. And he did not proceed in a normal manner, walking across the parkway, in order to avoid what he assumed to be a muddy parkway, he "wanted to jump out on the street." On cross-examination he described the incident in specific detail:

"Q. * * * As you walked along going back along Wyoming—Jefferson, back to Wyoming that evening, did you look down to see where you were walking along the sidewalk area?

"A. Well, in the rain I was, yes.

"Q. * * * Did you happen to notice any rail fences along Jefferson?

"A. No. I wasn't looking straight down, I was just looking up in front of me.

"Q. Oh, as you were looking ahead of you then before you reached the property on the corner, did you happen to notice rail fences on either side of the sidewalk before you reached that property? A. No.

*　*　*　*　*　*

"Q. You say there was a street light on the corner there and it was lit. * *

"A. Yes, it was lit.

"Q. It was lit at that time, and there was nothing obstructing your view of the sidewalk area or the rail fences at that time, was there? A. No.

\* \* \* \* \* \*

"Q. \* \* \* Now, did you stop on the edge of the sidewalk before you attempted to cross the parking strip? A. No.

"Q. \* \* \* You merely walked along in a hurry, then continued to walk right over it, is that right? A. That's right.

"Q. Now, you say you wanted to avoid the mud. Did you see the mud there?

"A. Well, I knew it was dirt there and it was raining, there had to be mud.

"Q. Well, do you know whether that was paved there? A. No.

\* \* \* \* \* \*

"Q. What had you intended to step on, the street or the curb. A. Jump out into the street.

\* \* \* \* \* \*

"Q. Do you know whether or not there was a curb there, Dan? A. Well, I imagine there is.

"Q. Did you look down to see whether there was a curb? A. Well, no.

"Q. Pardon me? A. No, I didn't.

"Q. Did you look out into the street to see whether you were jumping into a puddle of water? A. No.

"Q. At any time you were attempting to negotiate the sidewalk, did you look down to see where you were walking? A. No."

Again on cross-examination:

"Q. \* \* \* On both sides of the sidewalk, where you walked that night, there was this iron railing was there not? A. That's right.

"Q. And is it your testimony before this Court and jury that you never even saw the iron railing at any time that night, is that right?

"A. Well, I don't remember seeing it at any time.

"Q. You mean you don't now remember seeing it? A. Well, no, I didn't see it that I know of.

\* \* \* \* \* \*

"Q. \* \* \* When you were walking down this sidewalk right here, that I am pointing to (indicating) right under this automobile, white automobile, this lamp post illuminated or shed light down so you could see, isn't that correct? A. Well, it did.

"Q. \* \* \* Had you looked, you would have had no difficulty seeing this railing, would you, Dan? A. No, I probably wouldn't have.

\* \* \* \* \* \*

"Q. \* \* \* But you didn't look, is that correct?

"A. I guess not, for I didn't see it.

\* \* \* \* \* \*

"Q. Was there any physical obstacle or obstruction, Dan, to have prevented you from having stayed within the confines of the sidewalk, that is provided by the city, and walk straight across the street like this lady shown in the photograph is attempting to do?

"A. No, nothing in the way.

"Q. You just chose to take a short-cut and cut across this parkway, is that right?

"A. That's right.

"Q. And at no time noticed these rails, although you had been walking directly between them as you ap-

proached the corner, is that correct? A. That's right."

While Dan once said that he looked for traffic, this is not a case of momentary forgetfulness (74 A.L.R.2d 950, annotating Harbourn v. Katz Drug Co., (Mo.) 318 S.W.2d 226) because he did not look where he was walking or jumping, was never aware of the guardrail and there was in fact no distraction. He was not required to keep his eyes fixed on either the sidewalk or the parkway, but he was not using the parkway as a place to walk and, even though he did not know of the railing, it must not be overlooked that he was not walking "in the manner that persons ordinarily do." Seitter v. City of St. Joseph, (Mo.) 358 S.W.2d l. c. 269. Instead of walking in the normal manner he attempted to "short cut" not only the sidewalk area but by jumping over it the parkway itself. It was dark and raining but Dan does not rely on the fact of darkness and insufficient street lighting, candidly and frankly he said that he did not look at the sidewalk where he was walking or at the street or parkway or the place he intended to jump, and, admittedly, the light was such that had he looked he would have seen the railing. In these particularly detailed circumstances reasonable minds could not differ and it may only be said as a matter of law that Dan was guilty of contributory negligence. As the court once said in even a sidewalk case: "Without going further, it is evident that all the cases, even the dissenting opinion in the Ryan Case, require a pedestrian to have some concern for his own safety in walking on a public sidewalk though he may be innocent of knowledge that there are defects or obstructions along the way. He does not have to be constantly on the alert for defects not plainly observable, but neither may he go along paying no attention to where he is walking so that he would fail to see and avoid obvious obstructions. He must proceed as a reasonably prudent footman would do, with his eyes open and having regard for his general course. * * We are unable to see anything in any of these decisions which will exculpate the appellant here from the charge of contributory negligence under his own testimony." Sloan v. American Press, 327 Mo. l. c. 484, 486, 37 S.W.2d l. c. 890, 891.

In these detailed circumstances and for these indicated reasons the judgment in favor of the plaintiff is reversed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.