**Elva SUTTON and Titus Sutton, Appellants,**

v.

**FOX MISSOURI THEATRE COMPANY, a**
corporation, and The City of Joplin,
Respondents.

No. 48675.

Supreme Court of Missouri,

Division No. 1.

April 9, 1962.

William H. Burden, Joplin, Edward V. Sweeney, Monett, for appellants.

Karl W. Blanchard, Seiler, Blanchard & Van Fleet, Joplin, for respondent Fox Missouri Theatre Co.

Loyd E. Roberts, Joplin, for respondent City of Joplin.

HOLLINGSWORTH, Judge.

Plaintiffs Elva Sutton and Titus Sutton, wife and husband, seek damages in the total sum of $40,000 from Fox Missouri Theatre Company, a Corporation, and the City of Joplin, resulting from personal injuries sustained by Mrs. Sutton on December 26, 1957, when her foot caught upon the base of a recruiting sign placed and maintained by the U. S. Naval Department upon a public sidewalk in the City of Joplin in front of the entrance to the Fox Theatre, causing her to trip and fall upon the sidewalk as she attempted to walk through a crowd of Fox's patrons standing in front of its theatre awaiting admission. The petition alleges Mrs. Sutton's damages for personal injuries in the sum of $35,000 and Mr. Sutton's damages for loss of her services and consortium and for medical expenses incurred in the sum of $5,000.

The case has been twice tried. At the first trial, the court, on motion of each defendant filed at the close of plaintiffs' evidence, directed a verdict in favor of both defendants. On appeal to this court from the judgment entered in accordance with that verdict, it was held that the trial court erred in directing a verdict in favor of defendants and the judgment was reversed and the cause remanded for further proceedings not inconsistent with the views in the opinion expressed. 336 S.W.2d 85. Reference is here made to that opinion for the "law of the case" as therein stated.

At the instant trial, the jury, following submission of the case at the close of the evidence adduced in behalf of all of the parties, returned a verdict in favor of defendants. Plaintiffs have again appealed from the adverse judgment rendered in accordance with that verdict, contending primarily that the court committed prejudicial error in the giving of numerous instructions in behalf of defendants.

Plaintiffs' case against Fox was submitted under plaintiffs' Instruction No. 1. It, in substance, directed a verdict for plaintiffs if the jury found that on the 26th day of December, 1957, on invitation of Fox a crowd of people was assembled on the public sidewalk in front of the theatre for the purpose of purchasing tickets for admission to a matinee show; that Fox negligently failed to require the crowd to form an orderly line and leave a portion of the sidewalk open for unobstructed use by the public; that Fox negligently caused and permitted the crowd to obstruct the sidewalk and surround and obscure reasonable visibility of the sign located on the sidewalk *in the vicinity of the theatre*[1]; that Mrs. Sutton was endeavoring to walk southward on the sidewalk through the crowd; that she tripped over the base of the sign, fell and was injured; that her injuries were caused by the negligence of Fox in the particulars aforesaid; and provided the jury further found that she was exercising ordinary care for her own safety. The instruction also declared that if the jury should further find that Mrs. Sutton was the wife of Titus Sutton and that as a direct result of her injuries he sustained loss of her services, etc., and incurred certain expenses, the jury should find in his favor.

Plaintiffs' case against the City of Joplin was submitted under plaintiffs' Instruction No. 2. After declaring the duty of City to exercise ordinary care to maintain its sidewalks in a reasonably safe condition for persons traveling thereon while exercising care for their own safety, it, in substance, directed a verdict for plaintiffs if the jury found that on and prior to December 26, 1957, the sidewalk in front of the theatre was heavily traveled; that at times Fox's patrons crowded the sidewalk *in the vicinity of the theatre*[2]; that, considering the traffic conditions as shown by the evidence, the sign constituted an obstruction of the sidewalk and rendered it not reasonably safe for persons lawfully traveling thereon; that City, in the exercise of ordinary care, could have known of the presence of the sign on the sidewalk in time to have removed the same; that City, by permitting the sign to remain on the sidewalk in the vicinity aforesaid[2], failed to exercise ordinary care and was negligent; that on December 26, 1957, a crowd of people was assembled on the sidewalk in front of the theatre preparatory to entering as customers; that while said crowd was so congregated Mrs. Sutton was endeavoring to walk southward through the crowd; that she tripped and fell over the sign and was injured; that her injuries were caused by the negligence of City as aforesaid; and provided the jury further found that she was exercising ordinary care for her own safety. The instruction also submitted Mr. Sutton's case against City substantially as submitted in Instruction No. 1.

We find no material variation in the evidence adduced in behalf of plaintiffs at the second trial from that adduced at the first trial, but, for convenience, we narrate such portions thereof as are necessary to a determination of the questions here presented.

Main Street in Joplin runs north and south. Fox Theatre, engaged in showing motion pictures, is and since 1955 has been located on the east side of the street, at 415 Main, in the "downtown" portion of the city. The front of the building is 18.7 feet in width. The sidewalk in front of the theatre and for several "doors" north and south thereof is approximately 10.4 feet in width from the building line to the curbline. The ticket office, situate in the center of the front of the building, sits back (east) from the building line a distance of three feet, four inches. Entrances into the theatre are on each side of the ticket office.

---

1. Plaintiffs' evidence showed and the instruction should have hypothesized "in *front* of the theatre."

2. See footnote No. 1.

The naval recruiting sign over which Mrs. Sutton tripped had been maintained by the U. S. recruiting service upon the sidewalk in front of the theatre for an unstated number of years, but its position upon the sidewalk was changed from time to time; sometimes it was placed near the curbline opposite the south end of the building; sometimes it was placed in like position opposite the north end; sometimes it was placed on the sidewalk directly in front of the building. The city police department regularly and frequently patrolled the area in which the sign was located and City knew it was maintained on Main Street in the vicinity of the theatre and that its location was changed from time to time, but the chief of police, called as a witness by plaintiffs, denied that he had ever seen it directly in front of the theatre, stating that "sometimes it's up to the north of the Fox Theatre, * * * sometimes at the south end, * * * very seldom in the center, I have never seen it in the center because we keep that open, try to." The sign, a picture of which is shown in the first opinion, 336 S.W.2d l. c. 88, is rectangular in shape and may be thus roughly described: Two inches thick, 30 inches wide, and 45 inches long. Four iron braces flare out from its lower corners and are attached to iron bars that rest upon the sidewalk, to form a base 35 inches across and 34 inches from front to back. Its overall height, from sidewalk to top, is 59 inches.

On the day in which plaintiff was injured, December 26, 1957, and daily since December 21, 1957, Fox had advertised in both Joplin newspapers and showed in its theatre the following program:

Holiday Hilarity!

JERRY LEWIS as "The Sad Sack"
At 3:59—7 & 10:10

"THE PERSUADER"
Shown at 2:44—5:51 & 8:58

WALT DISNEY CARTOON
Cont. From 2:30—25¢ & 75¢

At the time of the second trial, Mr. and Mrs. Sutton were, respectively, 74 and 66 years of age. On the date she was injured, she and Mr. Sutton were living and had lived for 13 years on North Joplin Street, in the City of Joplin. About two o'clock on that afternoon they started to walk down town to go to Macy's Store, which is on Main Street south of the Fox Theatre. In so doing, they walked south along the east side of Main Street more than four blocks before coming to the theatre. As they approached the theatre, about 2:15 p. m., Mr. Sutton was walking beside Mrs. Sutton and had hold of her arm. When they came to the theatre, there was a dense crowd, composed mostly of children and teenagers, occupying the entire sidewalk in front of the theatre, standing as close together as persons could stand, and they were "milling around." As she and her husband tried to "edge", "elbow our way" through the crowd, he stepped behind her. She saw the lady in the ticket office but did not think she had started selling tickets. There was no one directing or controlling the crowd in any way. Mrs. Sutton is only five feet tall and could not see the sign until she got "right up to" it, "maybe a couple of feet or something like that." She then could see about two feet of its top in front of her face and knew that she could not walk through it, so she turned to her left (the east) to get around it, at which time she could not see its base, her right foot became caught on the angle of the base, which caused her shoe to be torn from her foot and her to fall headlong to the southeast into or in the direction of the south entrance into the theatre. When she confronted the sign and tripped over it, it was sitting on the sidewalk directly in front of the ticket office and about 12 to 14 inches back from the curbline. Prior to the occasion in question, she had seen the sign in front of the theatre on numerous occasions, but had merely glanced at it, never noticed its base, or how it was supported. The fall did not render her unconscious, but it dazed her. She lay

as she had fallen until Mr. Sutton helped her up and they then walked to Ramsey's Store, where she became ill from her injuries and they went to consult a doctor, who sent her to a hospital.

On cross-examination, Mrs. Sutton testified: She had seen the sign two or three times a week for a period of thirteen years prior to the time she fell and had passed by it when there were several people in front of it. When that occurred, she would walk around the people, up close to the building. At the time she was hurt, she was aware that she was at the sign and needed to go around it. But she had never noticed whether the sign stood on legs or how it was supported. From time to time, it would be at different places on the sidewalk. On this occasion no one jostled her as her foot caught on the east side of the base. The crowd kept her from seeing the base. She was looking up the street and at the crowd when she started around the sign. At the time she tripped, the crowd was standing close up to and all around the sign, people to the left of it, but she struck no one as she fell. As she and Mr. Sutton came toward the theatre, they first encountered the crowd about two doors north of the theatre and it extended south one or two doors beyond the theatre, but it was not as dense on either side as it was in front of the theatre.

Titus Sutton testified: He and Mrs. Sutton had to push their way through the crowd in front of the theatre. The sign was in front of the ticket office on this occasion. He had seen it in that position many times. He followed Mrs. Sutton as she stepped first to the right, then to the left, in a zigzag fashion, working her way south. When Mrs. Sutton came in front of the north side of the sign, she made a step to her left and her foot became caught. When she had fallen, she lay with her head to the southeast into or near the south entrance into the theatre. There was no usher or any attendant around. Neither was the crowd lined up in any orderly manner, nor any unobstructed way through which he and

Mrs. Sutton could walk southward past the theatre. He estimated the crowd in front of the theatre to consist of 150 to 175 persons as he and Mrs. Sutton undertook to go through it.

The evidence in behalf of defendants, insofar as here material, tended to show that on the day Mrs. Sutton was injured the sign was placed so that only a few inches of the northernmost portion of its base encroached north of the south line of the theatre building and that all of the remainder thereof was south of that building line; that several witnesses, including the theatre manager and ticket agent, city police officers and merchants whose business places were adjacent to the theatre, had never seen the sign in any other position; that 163 patrons entered the theatre between 2:00 and 3:00 p. m.; that the crowd in front of the theatre was not as large as plaintiffs' evidence tended to show; that there were fewer patrons on that day than on the previous days at which the same program was presented; and that numerous persons other than patrons of the theatre were upon and using the sidewalk in front and on both sides of the theatre that afternoon.

Plaintiffs challenge Instruction No. 8 given in behalf of Fox and No. 22 given in behalf of City. They insist that each instruction placed upon plaintiffs the burden of disproving Mrs. Sutton's contributory negligence; and that each instruction constituted misdirection and was confusing and misleading. The instructions, although not identically phrased, are similar in import and content, and insertion of one of them will suffice for discussion of the complaints made against both. Instruction No. 8 reads:

"The Court instructs the jury with reference to the charge of negligence made by plaintiffs against defendant Fox Theatre that under the laws of this state the burden of proof throughout this case has rested, and still continues to rest, upon plaintiffs to prove by the preponderance or greater weight of all the credible evidence every fact which,

under the instructions of the court, they are required to prove in order to make out their case against defendant Fox Theatre, and the law does not require defendant Fox Theatre to disprove any element of plaintiffs' case.

"Further in this regard if you find the evidence as to any one of such facts (which plaintiffs are required to prove) is in favor of defendant Fox Theatre, or even if you believe the evidence as to any one of such facts is evenly balanced between plaintiffs and defendant Fox Theatre, then plaintiffs have failed to make a case against said defendant and it is your duty to return a verdict in favor of defendant Fox Theatre, and this is true regardless of how your verdict may be against defendant city."

At the outset of this discussion we are confronted with an anomalous situation to which we find no reference in any of the briefs. Among the instructions given in behalf of plaintiffs was No. 27, which correctly placed upon each defendant the burden of proving its plea of contributory negligence on the part of Mrs. Sutton. But when we turn to plaintiffs' verdict-directing instructions (Nos. 1 and 2 hereinabove abstracted) we find that plaintiffs themselves, in the last clause of each of their verdict-directing instructions, expressly predicated any finding by the jury in their behalf against either defendant upon the admonition, *"provided you find that plaintiff, Elva Sutton, was exercising ordinary care for her own safety."* Unquestionably, plaintiffs thereby assumed and placed upon themselves the burden of disproving Mrs. Sutton's contributory negligence as a condition precedent to their right of recovery It is possible that plaintiffs, desirous of avoiding any phraseology in their verdict-directing instructions carrying even a suggestion that recovery might be denied them because of Mrs. Sutton's contributory negligence, so phrased their verdict-directing instructions without intending the net result with which the jury was (and this court is) confronted, to wit: confusing, if not conflicting, in-

structions on the burden of proving contributory negligence on the part of Mrs. Sutton, both given at the request of plaintiffs. Inasmuch as the cause must be reversed and remanded on other grounds, we need not further consider the situation thus presented; it may be avoided in any future trial.

However, we would be remiss if, in thus dismissing the challenge made against the foregoing instructions, we leave the impression that we otherwise approve them. In 1933, in the case of Mitchell v. Dyer, Mo., 57 S.W.2d 1082, 1083, Division No. 2 of this court pointed out that: "A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do. A plain declaration to that effect will be easily understood by a jury. The more the instruction is elaborated upon, the more complex it becomes and the more it is likely to be misunderstood. We are not deciding that the giving of this instruction alone would constitute reversible error, but we are criticizing it so that it will not be given again." Moreover, this and our other appellate courts again and again have called attention to the evils of burden-of-proof instructions that go beyond the simple requirements above set forth. See, among numerous other cases, Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S.W.2d 59, 63; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355, 360 [9–11]; Nelson v. Tayon, Mo., 265 S.W.2d 409, 414–415; Ledkins v. Missouri-Kansas-Texas R. Co., Mo., 316 S.W.2d 564, 569 [7], [8]. Despite these continued admonitions, we find our case reports increasingly encumbered with the perplexing problems arising from the continued giving of instructions such as these, all of which could have been avoided had the suggestions theretofore repeatedly urged by this court been heeded. See Szuch v. Ni Sun Lines, Inc., 332 Mo. 469, 58 S.W.2d 471, 473; Bleil v. Kansas City, Mo., 70 S.

W.2d 913, 915; Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10, 12–13; Nelson v. Wabash R. Co., Mo. App., 194 S.W.2d 726, 730; Palmer v. Lasswell, Mo., 287 S.W.2d 822, 829; Adams v. City of St. Joseph, 360 Mo. 806, 230 S.W. 2d 862, 863–864; Byrd v. McGinnis, Mo., 299 S.W.2d 455, 458 [3], [4]; Jewell v. Arnett, Mo., 318 S.W.2d 277, 278–279 [1].

The instructions discussed in each of the above-cited cases were ruled good or bad in the light of the situation there found and the instructions here under consideration must be weighed in the same manner. When it is noted that there were 28 instructions given in this case, it is inconceivable that any lay jury, without more specific guidance, could intelligently search out, evaluate and determine from this mass of technically worded directives (1) the specific details of the charge of negligence leveled against each defendant; (2) *every fact "which, under the instructions of the court,"* (not even specifying by number either of the verdict-directing instructions) plaintiffs were required to prove in order to "make out their case" against each defendant; (3) what constituted "any element of plaintiffs' case" (one element of which, under proper instructions, would necessarily include a determination by the jury that defendants had not proved Mrs. Sutton's contributory negligence); and (4) then give intelligent and understanding consideration to the legal niceties arising when *"any one of such facts is evenly balanced"* between plaintiffs and each defendant. (Defendants could easily have obtained an intelligent consideration of most of these matters had they resorted to the simple expedient of submitting a true converse instruction as to each verdict-directing instruction given in behalf of plaintiffs.)

■ We are convinced that in this case the situation was such that the instructions here in question, even if not amounting to positive misdirection in some respects, definitely were calculated to tend to leave the jury in utter confusion. So again we say:

"A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do. A plain declaration to that effect will be easily understood by a jury." And we say further that any burden-of-proof instruction that essays more must on review be considered in the light of the criticism here directed against more involved instructions. The trial court could not be convicted of error in insisting that this admonition be heeded.

■ Plaintiffs next contend that defendant Fox's Instruction No. 9 was prejudicially erroneous. It reads as follows:

"The court instructs the jury that if you find from the evidence that Mrs. Sutton's view of the base of the sign was blocked by persons on the sidewalk who were not patrons or customers of the Fox Theatre, or if you are unable to determine from the evidence whether the persons who blocked her view of the base of the sign (if you find her view was blocked) were patrons of the theatre or were customers of other business establishments or pedestrians on the sidewalk not going to the Fox Theatre, then in either of such events you will find your verdict in favor of Fox Theatre."

In the first opinion, 336 S.W.2d 85, 1. c. 94, we held that the evidence would support a jury finding: "(1) that the crowd assembled in front of the theatre was predominantly composed of Fox patrons awaiting admission thereto; (2) that it was assembled at the instance of Fox for the benefit of Fox; (3) that, while the crowd, as such, presented no hazard to the safe progress of Mrs. Sutton, yet, as it stood and 'milled around' the sign, it prevented Mrs. Sutton, in the exercise of ordinary care for her own safety, from seeing and appreciating the hazard of attempting to step around its extended base; (4) that Fox was charge-

able with notice of the location of the sign and was chargeable with notice of the hazard thus presented; and (5) that the 'artificial condition' thus created on the sidewalk by Fox, in causing and permitting the crowd assembled by it for its own benefit to gather so closely around the sign as unreasonably to endanger safe passage along the sidewalk by Mrs. Sutton, imposed upon Fox 'the exercise of reasonable care to guard the public from injury in such use.'"

■ The only testimony touching upon the manner in which Mrs. Sutton was injured was that of Mr. and Mrs. Sutton. Their testimony, as stated, tended to show she was caused to trip upon the base of the sign because it was obscured by the crowd awaiting admission into the theatre. Now, it is of course true that the jury was not required to believe that testimony, but there is not a scintilla of evidence in the case warranting an *affirmative finding* that her view of the base of the sign was blocked by persons on the sidewalk who were not patrons or customers of Fox Theatre. Consequently, the court erred in authorizing the jury to arrive at an affirmative finding of that fact. Moreover, the last clause of the instruction is also misleading and erroneous. Obviously, the jury could have found that the unregulated crowd of theatre patrons was a direct cause of Mrs. Sutton's view of the base of the sign being blocked, irrespective of whether the particular person or persons who blocked her view were patrons of the theatre or mere pedestrians who found themselves in the same predicament as did Mr. and Mrs. Sutton.

Plaintiffs next contend that Fox's Instruction No. 12 was prejudicially erroneous. It reads:

"The court instructs the jury that the mere fact that Mrs. Sutton fell and injured herself at a time when there were people on the sidewalk in front of the Fox Theatre (if so) does not in and of itself entitle plaintiff to recover.

"The court instructs the jury that the defendant Fox Theatre is entitled to make a reasonable use of the public sidewalk, including locating its box office at such a point that people will stand on the sidewalk while purchasing or waiting to purchase tickets, provided the sidewalk does not become unreasonably crowded.

"Therefore, if you find from the evidence that on the occasion of Mrs. Sutton's fall defendant Fox Theatre was doing nothing more than to make a reasonable use of the public sidewalk in front of its theatre, then you are instructed that your verdict will be in favor of defendant Fox Theatre."

The first paragraph of the instruction cast no light upon any *issue or contention* made by plaintiffs in this case and the reason for giving it remains unexplained, but we pass on to the remaining paragraphs. Those paragraphs gave to the jury a roving commission to find a verdict in favor of Fox if they found the theatre was doing nothing more than to make a reasonable use of the sidewalk for its patrons provided the sidewalk did not become unreasonably crowded, irrespective of its liability (as declared in the first opinion) for bodily injuries caused to Mrs. Sutton by reason of failure to exercise ordinary care to maintain the sidewalk in a reasonably safe condition resulting from the private use thereof by Fox for the benefit of Fox, as a waiting area for its patrons, which exposed her, a traveler upon the sidewalk, to danger of tripping over the sign. For the reasons more fully stated in the original opinion, the instruction was obviously misleading and prejudicially erroneous.

■ Plaintiffs next contend that Instruction 16–A is prejudicially erroneous. It reads:

"* * * if you find * * * the recruiting sign mentioned in evidence was not located on the public sidewalk in front of the ticket office of the Fox Theatre as claimed by plaintiffs but that said sign was located on the public sidewalk south of the theatre * * * and

if you further find there were children, teenagers or other persons on the sidewalk in front of the 'box office but that by reason of the location of the sign as stated above, if you find that it was so located on the public sidewalk south of the theatre * * *, and that the sign was not obscured from reasonable visibility of plaintiff as she approached said sign, then you are instructed that your verdict must be for the defendant Fox Theatre, regardless of what your verdict may be with respect to the city."

Plaintiffs insist that there was no evidence to support an *affirmative finding* (a) that the sign was not located in front of the theatre on the day Mrs. Sutton was injured, or (b) that "the sign was not obscured from reasonable visibility of [Mrs. Sutton] as she approached" it. Fox insists that the instruction submitted facts, the existence of which would controvert an essential factual element of plaintiffs' case, to wit: that Mrs. Sutton's view of the base of the sign was obscured. An examination of the record convinces us that there was sufficient evidence from which the jury could infer from evidence adduced in behalf of Fox that the sign was not *in front* of the theatre on the day in question and plaintiffs' challenge to that portion of the instruction must be denied. But there is not a scintilla of evidence upon which to base an *affirmative finding* that (if the sign was in front of the theatre) its base was not obscured from reasonable visibility of Mrs. Sutton as she approached it. Both plaintiffs had positively testified that it was so obscured and there was no other evidence touching upon that phase of the case. Concededly, when the defendant submits a true converse instruction, i. e., to the effect that unless the jury finds in favor of plaintiff each and every (or one or more) of the facts essential to his case, the verdict must be for defendant, it is not necessary that defendant support the instruction by evidence tending to disprove those facts. This, for the reason that the burden rests upon plaintiffs to prove every fact essential to

his case before he is entitled to recover. But where, as here, the defendant submits an affirmative finding of facts, the existence of which would disprove an essential fact of plaintiffs' case, that submission must have factual support in the testimony. Liebow v. Jones Store Company, Mo., 303 S.W. 2d 660, 662–663. Instruction 16–A, for the reasons stated, was prejudicially erroneous.

■ Plaintiffs next contend that Instruction 17, given in behalf of City, is prejudicially erroneous. It reads:

"The court instructs the jury that the law does not require the City of Joplin to keep sidewalks free of all objects that may impede the travel of pedestrians using said sidewalk, therefore you are instructed if you find that the plaintiff Elva Sutton on the day and at the place mentioned in the evidence fell or tripped over a United States recruiting sign on the sidewalk in front of or near the Fox Theatre in the City of Joplin (if you so find,) yet if you further find that said sign did not unreasonably obstruct pedestrian traffic at said time and place (if you so find) then your verdict must be for the defendant City of Joplin and against the plaintiffs."

City attempts to justify the instruction by the use of a statement of this court found in the original opinion, wherein we said *in part,* 336 S.W.2d 1. c. 91: "Its first contention is that 'obstructions placed upon the street *for the benefit of the public* do not render the street *defective unless they unreasonably obstruct or endanger public travel,'* citing in support thereof 19 McQuillin, Municipal Corporations, 3rd Ed., pages 196–197, 239, and Freeburne v. City of Emporia, 176 Kan. 503, 271 P.2d 298. We find no fault with that contention." (Emphasis supplied.) But counsel fails to note that immediately thereafter we defined the issue thus: "The question to be determined is, therefore, whether a jury would be warranted in finding that a sign of the size and form here shown, placed and maintained

upon a public sidewalk in front of a theatre at which crowds frequently assemble, would, under the circumstances here shown, unreasonably obstruct *and endanger public travel*—a question we later herein explore." (Emphasis supplied.) Counsel also fails to note that the opinion then went on to overrule City's contention that, in allowing the sign to be placed upon the sidewalk, it was performing a governmental function *for the benefit of the public,* following which we further said, 1. c. 92: "The law in Missouri is clear that it is the primary and non-delegable duty of the city to exercise ordinary care to keep its streets in a reasonably safe condition for travel"; and that, 1. c. 92, we thereafter quoted with approval from an earlier case as follows: " 'A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounded duty of keeping them free from nuisances, defects and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction, or repair the defect.' " Moreover, we thereafter further expressly held, 1. c. 93: "But, we are convinced that when it is shown, as the evidence herein tends to show, that the sign and especially the base thereof was closely surrounded by a dense crowd of people so as to obstruct a view of its base and endanger the safety of a person using the sidewalk in the exercise of ordinary care for his own safety, then a duty rested upon the City to cause its removal or to warn travelers using the sidewalk of the hazard existing, if the City in the exercise of ordinary care knew or should have known of the condition."

Considered in the light of the law as above declared, the opening statement in the instruction is erroneous and misleading. The law requires the City to exercise ordinary care to keep its streets in a reasonably safe condition for travel. The issue, as declared in the opinion, was not whether the sign merely *unreasonably obstructed*

*pedestrian traffic;* it was whether, under the circumstances shown in evidence, *the City exercised ordinary care to keep the street in a reasonbly safe condition for such travel.* The instruction not only falls far short of meeting that issue, it leaves the fate of plaintiffs' action to the ideas of the jury, not as to whether the street had been rendered unsafe for travel by Mrs. Sutton by reason of the City's negligent failure to comply with primary and non-delegable duty, but merely whether the sign unreasonably obstructed pedestrian travel. The instruction was clearly erroneous.

Plaintiffs next contend that Instruction No. 19 given in behalf of City was prejudicially erroneous. It reads:

"The court instructs the jury that if the plaintiff, Elva Sutton, on the day and at the place mentioned in the evidence, knew of the existance of the United States Naval recruiting sign, she had the duty to exercise her faculties to see and discover any dangers that she might encounter because of the existance of such sign upon the street at the point mentioned in the evidence, and if she failed so to do, and by reason of such failure, if any, was thereby injured, then the plaintiff was guilty of contributory negligence as defined in other instructions of this court and your verdict will be for the defendants and against the plaintiff and this is true even though you may believe the City of Joplin was negligent in permitting such sign to be upon the street at the time and place mentioned in the evidence."

The City cites in justification of the instruction the cases of Ryan v. Kansas City, 232 Mo. 471, 134 S.W. 566; Woodson v. Metropolitan Street Ry. Co., 224 Mo. 685, 123 S.W. 820, 823, 30 L.R.A.,N.S., 931; Wienshienk v. Phillips Petroleum Co., Mo. App., 259 S.W.2d 414, 416. Neither of them justifies the instruction. In fact, each of them expressly declares the duty of travelers *to exercise ordinary care* in the use of

their faculties to avoid injury. The first opinion in this case, 336 S.W.2d, 1. c. 91, discusses at length the several factors with which, according to the testimony, Mrs. Sutton was confronted as she walked through the crowd and expressly pointed out that "the facts shown in evidence, considered from the standpoint of whether Mrs. Sutton was in the exercise of ordinary care under the circumstances shown, presented a jury question as to her contributory negligence." The instruction in this case ignores those factors and, in effect, directs a verdict against plaintiffs on grounds of contributory negligence of Mrs. Sutton, if, through use of her faculties, she *could* have seen the base of the sign, regardless of whether, under the circumstances shown in evidence, she was exercising the degree of care ordinarily exercised by the ordinary person under the same or similar circumstances. The instruction is prejudicially erroneous.

■ Plaintiffs next contend that Instruction No. 20, given in behalf of City, was prejudicially erroneous. It reads:

"The court instructs the jury that the mere fact that plaintiff was injured by a fall upon the sidewalk mentioned in the evidence in the City of Joplin (if she was), is no evidence of itself, that the defendant City of Joplin was negligent in keeping said sidewalk in a reasonably safe condition for pedestrian use. The plaintiff must show by the evidence that the defendant City of Joplin failed to use ordinary care as defined in these instructions in maintaining said sidewalk for pedestrian use and the burden of proof is upon the plaintiff to establish such want of ordinary care by the greater weight of the evidence."

The instruction is unquestionably prejudicially erroneous. In the first place, there is no evidence of the "mere fact" of Mrs. Sutton's falling upon the sidewalk. The actual evidence in the case was that she tripped upon a sign that was maintained

upon the sidewalk and fell to the sidewalk. We may assume that the "mere fact" that she tripped upon the sign alone would not, standing alone, make a submissible case of negligence against the City, but, as this court said in an analogous situation: "[W]e believe it to be absolutely untrue to say that the mere fact that plaintiff was 'injured by a fall' upon City's street was *no evidence* of itself that defendant was negligent." Rittershouse v. City of Springfield, Mo.Sup., 319 S.W.2d 518, 520. We need not herein further discuss the many cases wherein the effect of other "mere fact" instructions is considered. See generally Citizens Bank of Festus v. Missouri Natural Gas Co., Mo.Sup., 314 S.W.2d 709, 714, 72 A.L.R.2d 855; Grote v. Reed, Mo., 345 S.W. 2d 96, 99–101; Jones v. Kansas City, Mo. Sup., 243 S.W.2d 318, 321–322; and cases cited in each.

■ Plaintiffs next contend that Instruction No. 11 given in behalf of Fox and Instruction No. 18 given in behalf of City are erroneous. These instructions hypothesize in detail the testimony of plaintiffs upon which each of defendants submits a finding that Mrs. Sutton was guilty of contributory negligence. The instructions are also similar in that *both omit any reference whatever to the testimony favorable to plaintiffs on the issue of Mrs. Sutton's contributory negligence.* In the original opinion we discussed the effect of the facts as submitted in Instructions Nos. 11 and 18, saying of them, 336 S.W.2d 1. c. 90: "They (defendants) point out that she had passed the theatre on may occasions; had seen the sign and well knew that it long had been maintained in front of the theatre; that on the day in question she was confronted with and saw the sign before tripping upon its base and was conscious of the fact that she had to go around it; that ordinary care for her own safety required her to exercise the diligence of a reasonably careful person confronted with a like situation to avoid tripping over its base; and that these facts, considered in the light of the cases cited, conclusively establish as a matter of law

that she failed to exercise the care so required of her. Were the facts as simple as those upon which defendants premise their conclusion, we would be inclined to agree with them, but they are not." We then further stated, 1. c. 90: "[W]e would have no hesitancy in holding that any person approaching the sign in daylight upon an uncrowded street in a position to see it in its entirety and observe the flaring out of the irons supporting it and whose attention was not otherwise reasonably distracted would be chargeable with negligence if he tripped over it in attempting to avoid coming into contact with it. That, however, is not the situation here presented. Here, Mrs. Sutton was confronted with the necessity of threading her way through a 'dense' crowd that extended from the curb to the building line, not only in front of the theatre but also on both sides of it. She was not as tall as the average height of the crowd and was primarily intent upon getting through the crowd and, to some extent, necessarily distracted by it. She did not and, it may be inferred, could not see the sign until she was immediately in front of and so close upon it that she could not see its base." Then, basing our conclusion upon those premises, we held that we could not declare as a matter of law that ordinary care on her part would require her to anticipate that defendants would permit to remain upon a public sidewalk in front of the theatre (at which a crowd of patrons stood) a sign with a base so constructed that it could catch her foot in attempting to go around it or that ordinary care would require her first to ascertain that the sign was supported by iron braces flaring out from its lower corners.

We are, therefore, clearly of the opinion that Instructions Nos. 11 and 18 were prejudicially erroneous. They single out and emphasize portions of plaintiffs' evidence that, standing alone and out of context with other portions of their testimony, would be persuasive of Mrs. Sutton's negligence, and authorize the jury to so convict her of negligence without giving consideration to the remainder of plaintiffs' evidence, which we held was sufficient to support a finding that she was not guilty of contributory negligence. Instructions such as these cannot be approved. See Conley v. Fuhrman, Mo., 355 S.W.2d 861, not yet officially reported.

Fox would have us again review the original contention made by it on the first appeal, that Mrs. Sutton was guilty of contributory negligence as a matter of law. For the reasons stated in the first opinion, we are still constrained to hold she was not.

The judgment is reversed and the cause is remanded for further proceeding not inconsistent with the views herein expressed.

All concur.